LANDON v TITAN INSURANCE COMPANY

Docket No. 230596. Submitted June 4, 2002, at Grand Rapids. Decided
June 14, 2002, at 9:00 A.M. Leave to appeal sought.

Vickie L. Landon brought an action in the Kalamazoo Circuit Court
against Titan Insurance Company, seeking no-fault insurance bene-
fits for injuries sustained in an automobile accident that occurred
while the plaintiff was driving an uninsured vehicle owned by a
friend who had left the automobile, with its key in it, in the plain-
tiff's yard so that the plaintiff could give the keys to potential pur-
chasers who wished to test-drive the vehicle. The plaintiff did not
own a vehicle, carried no vehicle insurance, and did not live with a
relative who carried vehicle insurance. The Michigan Assigned
Claims Facility named the defendant as the insurer to handle the
plaintiff's claim. The court, Philip D. Schaefer, J., granted summary
disposition in favor of the defendant, concluding that the plaintiff
unlawfully took the vehicle and exceeded her authority and was
therefore precluded from receiving personal protection insurance
benefits under MCL 500.3113(a). The plaintiff appealed.

The Court of Appeals *held*:

1. The plaintiff, as a matter of law, did not violate the statute
regarding taking possession of and driving away a motor vehicle
belonging to another, MCL 750.413, because she was a bailee of the
vehicle at the time of the accident.

2. A violation of the statute regarding use of a motor vehicle
without authority but without intent to steal, MCL 750.414, does
not call for application of the benefits exclusion in subsection
3113(a), because it is the unlawful nature of the taking, not the
unlawful nature of the use, that forms the basis of the exclusion
under subsection 3113(a) and an individual can violate MCL
750.414 even though the individual was in lawful possession of the
vehicle.

3. The plaintiff has raised a genuine issue of material fact regard-
ing whether she had the vehicle owner's implied consent to use the
vehicle. The common-law presumption, created under the owner's
liability statute, MCL 257.401(1), that an operator of a vehicle is
driving it with the implied consent of the owner has not been
rebutted by the defendant. Therefore, the plaintiff did not take the

vehicle "unlawfully" for purposes of subsection 3113(a). The court erred as a matter of law in ruling that the plaintiff unlawfully took the vehicle for purposes of subsection 3113(a).

4. The court erred in ruling that the plaintiff did not have a reasonable belief that she could take and use the vehicle. A genuine issue of material fact exists regarding whether the plaintiff reasonably believed that she could take and use the vehicle. The order granting summary disposition must be reversed and the matter must be remanded for further proceedings.

Reversed and remanded.

1. AUTOMOBILES — BAILEES — TAKING POSSESSION OF AND DRIVING AWAY ANOTHER'S VEHICLE.

A bailee of a motor vehicle may not as a matter of law violate the statute regarding taking possession of and driving away a motor vehicle belonging to another (MCL 750.413).

2. AUTOMOBILES — UNLAWFUL TAKING — INSURANCE.

A person can violate the statute regarding use of a motor vehicle without authority but without intent to steal even though the person was in lawful possession of the vehicle; a violation of the statute does not qualify as an unlawful taking for purposes of the exception in the no-fault act that denies personal protection insurance benefits to an individual who has unlawfully taken a motor vehicle involved in an accident (MCL 500.3113[a], 750.414).

3. AUTOMOBILES — CONSENT TO OPERATE — PRESUMPTIONS.

The operation of a motor vehicle by one who is not a member of the family of the owner gives rise to a rebuttable common-law presumption that the operator was driving the vehicle with the express or implied consent of the owner.

*Allaben, Vander Weyden, Timmer & Bandeen* (by *John R. Allaben*), for the plaintiff.

*Harvey Kruse, P.C.* (by *Gary L. Stec* and *Lanae L. Monera*), for the defendant.

Before: JANSEN, P.J., and SMOLENSKI and WILDER, JJ.

SMOLENSKI, J. In this first-party no-fault insurance benefits case, plaintiff appeals as of right from the trial court's grant of summary disposition in favor of

defendant. We reverse and remand for further proceedings consistent with this opinion.

Plaintiff, Vickie Landon, was involved in an automobile accident on July 28, 1998, at the intersection of Sprinkle Road and Franklin Road in Kalamazoo, Michigan. At that time, plaintiff did not own her own vehicle, she carried no automobile insurance, and she did not live with any relative who carried automobile insurance. Further, at the time of the accident, plaintiff was driving a 1985 Buick automobile owned by her friend Janice Roe. Although the vehicle carried valid license plates, it was uninsured. Therefore, under MCL 500.3172, the Michigan Assigned Claims Facility named defendant to handle any no-fault claims arising from the accident.

Five months before the accident, in February 1998, Roe had allowed the insurance to expire on the Buick, through nonpayment of the premium. Roe decided to sell the vehicle because she was not driving it, it was uninsured, and she had two other vehicles. Because Roe lived in a rural area, she thought that more people would see the vehicle if it were parked in plaintiff's yard. Therefore, Roe obtained plaintiff's permission to park the vehicle in her yard. To the best of her recollection, Roe parked the vehicle in plaintiff's yard in late June or early July 1998, while plaintiff was not at home. Plaintiff testified that she returned from vacation shortly after the Fourth of July holiday, and that Roe's vehicle was parked in her yard when she returned.

Roe acknowledged that the vehicle was uninsured while parked in plaintiff's yard. However, she testified that plaintiff did not know about the vehicle's uninsured status. Roe testified that she tried to telephone

plaintiff to inform her that the vehicle was uninsured, but she was never able to contact plaintiff with that information. Furthermore, both Roe and plaintiff testified that they never discussed whether plaintiff was permitted to use the vehicle while it was parked in plaintiff's yard. Therefore, Roe neither gave plaintiff express permission to use the vehicle, nor expressly prohibited plaintiff from doing so. However, during her deposition, Roe equivocated about whether she *would have* granted plaintiff permission to use the vehicle, had the two discussed the topic. On the one hand, Roe testified that she trusted plaintiff, and that she would not have had any problem loaning plaintiff her vehicle. On the other hand, Roe testified that she would have been concerned about the lack of insurance on the vehicle, and that she probably would have told plaintiff not to drive it for that reason.

Because Roe had only one set of keys to the vehicle, she left the vehicle unlocked and placed the keys under the floor mat. Roe intended that potential purchasers could use the keys to take the vehicle for a test-drive.[1] According to plaintiff, she did not believe that she was expected to accompany potential purchasers on test-drives. Rather, plaintiff believed that she could simply give potential purchasers the keys to Roe's vehicle. While plaintiff conceded that Roe probably did not expect her to use the vehicle herself, she also testified that, when she used the vehicle on the day of the accident, she did not think that Roe would have a problem with her driving it. Furthermore, plaintiff testified that she had probably driven

---

[1] There was no testimony in the lower court record to indicate whether any potential purchasers actually *did* take the vehicle for a test-drive.

Roe's vehicle on prior occasions, before Roe parked it in plaintiff's yard.[2]

In the trial court, defendant filed a motion for summary disposition, arguing that MCL 500.3113(a) prohibited plaintiff's claim for personal protection insurance (PIP) benefits because plaintiff had "unlawfully" taken Roe's vehicle on the date of the accident. The trial court agreed, concluding that plaintiff "did unlawfully take Ms. Roe's vehicle." The trial court reasoned that: (1) Roe had not given plaintiff express permission to use the vehicle, (2) plaintiff did not have any expectation that she could drive the vehicle, clearly understanding that the vehicle was on her property only to be sold, and (3) plaintiff was given the authority to allow potential buyers to test-drive the vehicle, but plaintiff was not herself a potential buyer and was not test-driving the vehicle at the time of the accident. On the basis of those facts, the trial court concluded that plaintiff "exceeded her authority and unlawfully took Ms. Roe's vehicle." Accordingly, the trial court granted defendant's motion for summary disposition, precluding plaintiff's claim for PIP benefits. Plaintiff appeals as of right from that order.

This Court reviews de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). We must consider the affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties in the light most favorable to the party opposing the motion. *Id.* Summary disposition is properly granted under

---

[2] In contrast, Roe testified that plaintiff had never driven the vehicle before the day of the accident.

MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

Plaintiff first argues that the trial court erred in ruling, as a matter of law, that she had "unlawfully" taken Roe's vehicle for purposes of MCL 500.3113(a). The statute provides, in pertinent part:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle. [MCL 500.3113(a).]

Under this statutory provision, coverage for PIP benefits will be denied if "(1) a person takes a vehicle unlawfully and (2) that person did not have a reasonable basis for believing that she could take and use the vehicle." *Mester v State Farm Mut Ins Co*, 235 Mich App 84, 87; 596 NW2d 205 (1999), citing *Bronson Methodist Hosp v Forshee*, 198 Mich App 617, 626; 499 NW2d 423 (1993). The trial court granted defendant's motion for summary disposition, primarily on the basis of a conclusion that plaintiff "did unlawfully take" Roe's vehicle on the day of the accident. Therefore, resolution of the present case turns on what it means to "unlawfully" take a vehicle in the context of subsection 3113(a).

The phrase "taken unlawfully" is not defined in the no-fault act itself. *Mester, supra* at 87; *Butterworth Hosp v Farm Bureau Ins Co*, 225 Mich App 244, 247; 570 NW2d 304 (1997). However, defendant argues that there are two ways that a person can take another's

vehicle "unlawfully," for purposes of subsection 3113(a). Defendant argues that a person can either violate MCL 750.413 (unlawfully taking possession of and driving away a motor vehicle), or a person can violate MCL 750.414 (use of a motor vehicle without authority but without intent to steal). Defendant argues that plaintiff violated both these statutory sections and is therefore barred from collecting PIP benefits under MCL 500.3113(a).

MCL 750.413 sets forth the felony offense of taking possession of and driving away a motor vehicle belonging to another.[3] The statute provides:

> Any person who shall, wilfully and without authority, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than five years. [MCL 750.413.]

The essential elements of this offense are: "(1) possession of a vehicle, (2) driving the vehicle away, (3) that the act is done wilfully, and (4) the possession and driving away must be done without authority or permission." *People v Hendricks*, 200 Mich App 68, 71; 503 NW2d 689 (1993), aff'd 446 Mich 435; 521 NW2d 546 (1994). See also *People v Andrews*, 45 Mich App 354, 356; 206 NW2d 517 (1973).

---

[3] This offense is sometimes called "UDAA," and is sometimes called "joy-riding." See *Mester, supra* at 88; *People v Hayward*, 127 Mich App 50, 61; 338 NW2d 549 (1983); *People v Murph*, 185 Mich App 476, 481; 463 NW2d 156 (1990). However, this nomenclature can be confusing, because the misdemeanor offense described in MCL 750.414 is also sometimes referred to as "joyriding." See *Priesman v Meridian Mut Ins Co*, 441 Mich 60, 70; 490 NW2d 314 (1992) (GRIFFIN, J., dissenting).

The unlawful taking and driving away of a motor vehicle does not require an intent to steal, that is, to permanently deprive the owner of his property. See *Hendricks, supra* at 71; *People v Murph,* 185 Mich App 476, 481; 463 NW2d 156 (1990); *People v Davis,* 36 Mich App 164, 165; 193 NW2d 393 (1971). While the offense requires the specific intent to take possession of the vehicle unlawfully, it does not require an intent to steal the vehicle; the offense punishes conduct that does not rise to the level of larceny because an intent to permanently deprive the owner of the property is lacking. *Mester, supra* at 88.

This Court has issued two decisions concerning whether a violation of MCL 750.413 qualifies as an "unlawful" taking and therefore allows application of the PIP benefits exclusion contained in MCL 500.3113(a). However, those decisions conflict. The *Mester* Court held that a violation of MCL 750.413 precludes an injured person from recovering PIP benefits under subsection 3113(a). *Mester, supra* at 88. In contrast, the *Butterworth* Court held that a violation of MCL 750.413 does not preclude an injured person from recovering PIP benefits under subsection 3113(a). *Butterworth, supra* at 249-250. The conflict between these two decisions appears to be premised on whether the "taken unlawfully" language of subsection 3113(a) applies only in situations where the injured person has "stolen" the vehicle in which the person was injured. Further, the conflict appears to arise from our Supreme Court's fractured opinion in *Priesman v Meridian Mut Ins Co,* 441 Mich 60; 490 NW2d 314 (1992).[4]

---

[4] The lead opinion in *Priesman* reasoned that the legislative purpose behind subsection 3113(a) was "to except from no-fault coverage *thieves*

Fortunately, we need not attempt to resolve the conflict between *Mester* and *Butterworth* in order to decide the present case. We conclude, as a matter of law, that plaintiff did not violate MCL 750.413 because she was a bailee of Roe's vehicle at the time of the accident. Therefore, whether a violation of MCL 750.413 allows application of the exclusion contained in MCL 500.3113(a) is technically irrelevant here.

Plaintiff argues that she did not violate MCL 750.413 because Roe voluntarily placed the vehicle in plaintiff's yard, and plaintiff was therefore in lawful possession of the vehicle on the day of the accident. Essentially, plaintiff argues that there is a distinction between an unlawful *taking* and an unlawful *use* of a motor vehicle, and contends that she did not commit an unlawful *taking*. In contrast, defendant contends that plaintiff "took possession" of the vehicle in an unlawful manner because she did not have Roe's express permission to drive it.

We conclude that the Court's decision in *People v Smith*, 213 Mich 351; 182 NW 64 (1921), is dispositive of this issue. In *Smith*, the defendant was the proprietor of a garage in Bay City. *Id.* at 351. The owner of a vehicle parked it in the defendant's garage at night, paying for the right to do so. *Id.* at 351-352. The defendant was convicted under the predecessor stat-

---

*while driving stolen vehicles* even if they or a spouse or relative had purchased no-fault insurance, and not necessarily to except joyriders from coverage." *Priesman, supra* at 67 (emphasis added). However, only three justices adopted this analysis, with a fourth justice concurring in the result only. *Id.* at 69. The three justices who joined in the dissent would have held that subsection 3113(a) applied not only to car thieves, but also to joyriders. *Id.* at 76 (GRIFFIN, J., dissenting).

ute to MCL 750.413,[5] apparently because he drove the vehicle without first obtaining the owner's permission to do so. *Smith, supra* at 352. At trial, the defendant had moved to dismiss the charges, arguing that he could not be guilty of "taking possession" of the vehicle because he had legal possession of the vehicle while it was parked in his garage. *Id.* at 352.

On appeal, our Supreme Court agreed with the defendant's argument, ruling:

> It is clear that, to constitute the offense, possession must be taken, followed by a driving or taking away, and this must be done wilfully or wilfully and wantonly and without authority. Here the defendant had possession as bailee and if he used such lawfully obtained possession for an unauthorized purpose and in breach of his trust as bailee, and wilfully and wantonly and without authority drove the car away from his garage he would *not* be guilty of the charge here laid. [*Id.* at 353 (emphasis added).]

Because the defendant was a bailee of the automobile, he could not be charged with unlawfully taking and driving away that automobile. *Id.* at 353. Our Supreme Court therefore reversed the trial court's order and vacated the defendant's conviction. *Id.*

In the present case, it is undisputed that Roe voluntarily parked her vehicle in plaintiff's yard, in an attempt to sell the vehicle. It is also undisputed that Roe left the keys in the vehicle and that plaintiff had Roe's permission to give those keys to potential purchasers who wanted to take the vehicle for a test-drive. We conclude that, like the garage owner in

---

[5] See 1919 PA 313, quoted in *Smith, supra* at 352. The 1919 version of the statute is virtually identical to the current version of the statute, MCL 750.413.

*Smith,* plaintiff was a bailee of the vehicle. Because plaintiff was in lawful possession of the vehicle on the day of the accident, she could not have violated MCL 750.413. The trial court did not expressly state whether it found that plaintiff had violated MCL 750.413. However, to the extent that the trial court's ruling was based on such a conclusion, that ruling was erroneous as a matter of law.

Defendant next argues that a violation of MCL 750.414 qualifies as an "unlawful" taking and therefore allows application of the PIP benefits exclusion contained in subsection 3113(a). We disagree. The trial court's opinion implies a finding that plaintiff violated MCL 750.414, because the court stated that "plaintiff *exceeded her authority* and unlawfully took Ms. Roe's vehicle." As will be discussed later, using a vehicle in excess of one's authority is the essence of the offense set forth in MCL 750.414. Assuming arguendo that plaintiff violated MCL 750.414, we disagree with the trial court's conclusion that such a violation necessarily qualifies as an "unlawful" taking under subsection 3113(a).

MCL 750.414 sets forth the misdemeanor offense of using a motor vehicle without authority but without intent to steal. The statute provides, in pertinent part:

> Any person who takes or uses without authority any motor vehicle without intent to steal the same, or who shall be a party to such unauthorized taking or using, shall upon conviction thereof be guilty of a misdemeanor . . . . the provisions of this section shall be construed to apply to any person or persons employed by the owner of said motor vehicle or any one else, who, by the nature of his employment, shall have the charge of or the authority to drive said motor vehicle if said motor vehicle is driven or used without the owner's knowledge or consent. [MCL 750.414.]

"To be convicted of this offense, a defendant must have intended to take or use the vehicle, knowing that he had no authority to do so." *People v Laur*, 128 Mich App 453, 455; 340 NW2d 655 (1983). Because no intent is required beyond that of doing the act itself, this is a general intent crime. *Id.* at 455-456. "The requirement that the defendant possess knowledge that his use of the vehicle is unauthorized does not raise a specific intent. This knowledge element constitutes the *mens rea* of the offense, as the intentional use of a vehicle, without more, is not a proscribed act. As such the knowledge element in this case reflects only the general criminal intent necessary in most crimes." *Id.* at 456.

Several appellate decisions have explored the distinction between the felony offense of unlawfully driving away a motor vehicle and the misdemeanor offense of using a vehicle without authority. The felony offense requires that "possession of the vehicle be taken unlawfully from the owner," while the misdemeanor offense requires only the illegal *use* of a vehicle, lawful possession of which has already been obtained. *People v Blocker*, 45 Mich App 138, 142; 206 NW2d 229 (1973), aff'd 393 Mich 501; 227 NW2d 767 (1975) (emphasis added). Stated differently, "[t]he distinction between the two offenses is that UDAA (joyriding) requires the defendant to *take possession* of the motor vehicle without the owner's permission, while the misdemeanor offense of unlawful use of a motor vehicle is committed when an individual, who has been given lawful possession of a motor vehicle, *uses* it beyond the authority which has been granted to

him by the owner." *People v Hayward*, 127 Mich
App 50, 61; 338 NW2d 549 (1983) (emphasis added).[6]

Furthermore, in *State Farm Mut Automobile Ins
Co v Hawkeye-Security Ins Co*, 115 Mich App 675;
321 NW2d 769 (1982), this Court impliedly concluded
that a violation of MCL 750.414 did not call for appli-
cation of the no-fault benefits exclusion contained in
subsection 3113(a). In *State Farm, supra* at 677, a
driver was involved in an accident while operating his
employer's vehicle. The parties stipulated that the
driver was permitted to use the vehicle for company
business during regular business hours, but also stip-
ulated that the driver was not in the course and scope
of his employment when the accident occurred. *Id.* at
678. The defendant insurer argued that the driver was
not entitled to PIP benefits under MCL 500.3113(a)
because he was "acting unlawfully" when he used the
employer's vehicle outside business hours, for per-
sonal uses. *State Farm, supra* at 681-682. This Court
disagreed, stating:

> [The driver] took the vehicle lawfully and within the
> scope of his employment. He continued to use the vehicle
> for his own purposes after working hours, and was injured
> while doing so. . . . Because the original taking of the motor
> vehicle in which [the driver] was injured was not unlawful,
> the exclusionary provisions of § 3113(a) do not apply. [*Id.*
> at 682.]

---

[6] This distinction is also set forth in *Smith, supra.* In that case, our
Supreme Court held that the defendant did not commit the offense of
unlawfully taking away a motor vehicle because he was in lawful posses-
sion of the vehicle as a bailee, and therefore could not have taken posses-
sion unlawfully. *Smith, supra* at 353. However, the Court noted that the
defendant had probably committed the offense of taking or using an auto-
mobile without authority and without intent to steal the automobile,
because that offense did not require an unlawful taking of possession. *Id.*
at 352.

That is, because the driver had not violated MCL 750.413, but at most had violated MCL 750.414, the no-fault benefits exclusion contained in subsection 3113(a) did not apply.

Because subsection 3113(a) applies only when an individual has unlawfully "taken" a vehicle, and because an individual can violate MCL 750.414 even though the individual was in lawful possession of the vehicle and did not "take" it unlawfully, a violation of MCL 750.414 does not call for application of the no-fault PIP benefits exclusion contained in subsection 3113(a).[7] As succinctly stated in *Bronson, supra* at 627, "it is the unlawful nature of the *taking,* not the unlawful nature of the *use,* that forms the basis of the exclusion" under subsection 3113(a).[8]

Plaintiff also argues that case law interpreting the owner's liability statute, MCL 257.401(1), is relevant to the determination whether plaintiff "unlawfully" took Roe's vehicle under subsection 3113(a). Plaintiff argues that she is entitled to the common-law presumption, created under the owner's liability statute, that an operator of a vehicle is driving it with the implied consent of the owner. Because she had Roe's implied consent to use the vehicle on the day of the accident, plaintiff argues that she could not have taken the vehicle "unlawfully" for purposes of subsection 3113(a). Defendant argues that the common-law

---

[7] This conclusion is further supported by this Court's decision in *Butterworth,* which held that a violation of MCL 750.414 did not call for application of the exclusion contained in subsection 3113(a). *Butterworth, supra* at 249-250. But compare the dissent in *Priesman,* where three justices would have held that a violation of MCL 750.414 does call for application of the exclusion contained in subsection 3113(a). *Priesman, supra* at 76 (GRIFFIN, J., dissenting).

[8] Emphasis added.

presumption does not apply because Roe did not physically give plaintiff the keys to the vehicle, but simply left the keys in the vehicle. In the alternative, defendant argues that plaintiff's own deposition testimony has successfully rebutted the presumption.

In *Fout v Dietz*, 401 Mich 403, 405; 258 NW2d 53 (1977), our Supreme Court explained that the "operation of a motor vehicle by one who is not a member of the family of the owner gives rise to a rebuttable common-law presumption that the operator was driving the vehicle with the express or implied consent of the owner."[9] In *Bieszck v Avis Rent-A-Car System, Inc*, 459 Mich 9; 583 NW2d 691 (1998), our Supreme Court explained the rationale behind the existence of this rebuttable presumption:

> "The [owner's liability] statute absolves the owner from liability only when the vehicle is being *driven* without his express or implied consent or knowledge. The consent or knowledge, therefore, refers to the *fact* of the *driving*. It does not refer to the *purpose* of the driving, the *place* of the driving, or to the *time* of the driving.
>
> "The purpose of the statute is to place the risk of damage or injury upon the person who has the ultimate control of the vehicle.
>
> "The owner who gives his keys to another, and permits that person to move several thousand pounds of steel upon the public highway, has begun the chain of events which leads to damage or injury.
>
> "The statute makes the owner liable, not because he caused the injury, but because he permitted the driver to be in a position to cause the injury." [*Id.* at 14, quoting *Roberts v Posey*, 386 Mich 656, 661-662; 194 NW2d 310 (1972) (emphasis in *Roberts*).]

---

[9] Citations omitted.

This Court has previously held that the broad definition of "consent" employed by our Supreme Court in the owner's liability context is of equal applicability when deciding whether a vehicle has been "taken unlawfully," for purposes of subsection 3113(a). *Bronson, supra* at 624-625. Plaintiff argues that the facts of this case support a finding that she had Roe's implied consent to use the vehicle, and therefore could not have taken the vehicle "unlawfully," because Roe parked the vehicle on plaintiff's property and entrusted plaintiff with the keys. Defendant argues that the presumption of implied consent does not apply because Roe did not physically give plaintiff the keys, but simply left the keys inside the vehicle. To support this argument, defendant relies on the language of *Bieszck, supra* at 14, quoting *Roberts, supra* at 662, which states that " '[t]he owner who gives his keys to another, and permits that person to move several thousand pounds of steel upon the public highway, has begun the chain of events which leads to damage or injury.' " In essence, defendant argues that Roe did not "give" her keys to plaintiff.

We conclude that plaintiff has, at the very least, raised a genuine issue of material fact regarding whether she had Roe's implied consent to use the vehicle. Roe's action of leaving the keys in the vehicle, while parked on plaintiff's property, qualifies as giving or entrusting plaintiff with the keys to her vehicle. Roe may only have intended that plaintiff use those keys in order to allow test-drives of the vehicle by potential purchasers. However, the fact that plaintiff exceeded the scope of intended use of the vehicle is irrelevant to the determination whether the driver

of the vehicle had the owner's implied consent to use it. *Bronson, supra* at 625.

Once we have determined that the presumption of implied consent applies in a particular case, we must determine whether the presumption has been successfully rebutted. In *Michigan Mut Liability Co v Staal Buick, Inc*, 41 Mich App 625, 626; 200 NW2d 726 (1972), this Court explained that "the defendant had to introduce positive, unequivocal, strong and credible evidence to the contrary in order to make this presumption disappear." Defendant argues that it has rebutted the presumption, given plaintiff's admissions that: (1) Roe did not give plaintiff express permission to drive the vehicle, (2) Roe did not expect plaintiff to drive the vehicle, and (3) the vehicle was on plaintiff's property to be sold, not for plaintiff's use.

However, defendant relies on only those portions of the deposition testimony that favor its position. Plaintiff also testified that: (1) she had probably driven Roe's vehicle on at least one occasion before the accident, (2) Roe had left the vehicle at plaintiff's house, with the keys in it, and (3) plaintiff did not think Roe would have a problem with her using the vehicle to drive half a mile down the road to a fast-food restaurant. Furthermore, Roe herself testified that she would have trusted plaintiff with her vehicle. We conclude that defendant has failed to present "positive, unequivocal, strong and credible evidence" that plaintiff did *not* have Roe's consent to use the vehicle. This is not a case, for example, where the vehicle's owner expressly told the ultimate driver that the driver could not use the vehicle. Both Roe and plaintiff testified that Roe never made any such statement. Thus, we conclude that the presumption of

implied consent has not been rebutted. Because plaintiff had Roe's implied consent to use the vehicle, she did not take it "unlawfully" for purposes of MCL 500.3113(a). *Bronson, supra.*

We conclude that the trial court erred as a matter of law in ruling that plaintiff "unlawfully" took Roe's vehicle for purposes of MCL 500.3113(a), because: (1) plaintiff did not violate MCL 750.413, (2) a violation of MCL 750.414 does not call for application of the benefits exclusion contained in subsection 3113(a), and (3) plaintiff is entitled to the common-law presumption that she had Roe's implied consent to use the vehicle.

Further, even if plaintiff had taken Roe's vehicle "unlawfully," the plain language of subsection 3113(a) would still permit plaintiff to recover PIP benefits if she "reasonably believed that . . . she was entitled to take and use the vehicle." As set forth in *Bronson, supra* at 626, "under the statute, it is necessary not only that the taking of the vehicle be unlawful, but also that the person who took the automobile not have a reasonable basis for believing that he could take and use the vehicle." The trial court ruled that plaintiff did not have a reasonable "expectation that she could drive the vehicle, clearly understanding that the vehicle was on her property only to be sold." We conclude that the trial court erred because a genuine issue of material fact existed regarding the reasonableness of plaintiff's belief that she had Roe's permission to use the vehicle.

Plaintiff did testify that the vehicle was parked on her property in order to facilitate its sale, and it was not placed on her property for her use. Further, she testified that Roe probably did not expect her to use

it. However, Roe did leave plaintiff in possession of both the vehicle and its keys. As plaintiff testified: "Basically, I mean, she knew I had the keys. She knew the car was at my house. She knew I had access to it, so I didn't think it was going to be that big of [a] deal. I was running to Taco Bell. Less than half of [a] mile from my house." On the basis of this testimony, and viewing all the evidence in the light most favorable to plaintiff, we conclude that a genuine issue of material fact exists regarding whether plaintiff reasonably believed that she was entitled to use the vehicle. MCL 500.3113(a). A rational jury could have found that plaintiff had a reasonable belief that Roe would not have minded plaintiff's borrowing the car for a quick trip to a fast-food restaurant only half a mile up the road.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.