*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VHS OF MICHIGAN, INC., doing business as
DETROIT MEDICAL CENTER,

       Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY and CURRENTLY
UNNAMED ASSIGNEE OF THE MICHIGAN
AUTOMOBILE INSURANCE PLACEMENT
FACILITY,

       Defendants-Appellees.

UNPUBLISHED
June 20, 2024

No. 365479
Wayne Circuit Court
LC No. 22-002236-NF

Before: YATES, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

In this action to recover personal protection insurance (PIP) benefits, plaintiff appeals as of right the trial court's order granting summary disposition to defendants Michigan Automobile Insurance Placement Facility (MAIPF) and Currently Unnamed Assignee of the MAIPF under

MCR 2.116(C)(10) (no genuine issue of material fact).[1]  For the reasons set forth in this opinion, we reverse.

## I.  BACKGROUND

This case arises out of medical treatment plaintiff provided to Michael Dantzler after Dantzler was injured in a motor vehicle accident on February 28, 2021.  According to Dantzler, he was self-employed as a "street mechanic" and worked out of his home.  Dantzler alleged that a frequent customer named Dee dropped off a 2014 Dodge Charger and the keys to the vehicle at Dantzler's home for repairs on February 26, 2021.  Dantzler repaired the vehicle on February 27, 2021.  Later that evening, two neighborhood children asked Dantzler to take them for a ride in the Charger.  Although Dantzler had consumed alcohol earlier that evening and did not have a valid driver's license, Dantzler agreed to take the children for a ride in the Charger.  Just after midnight on February 28, 2021, while driving the children in the Charger, Dantzler crashed into a parked vehicle.  He was injured and lost consciousness following the crash.  Dantzler was taken by ambulance to plaintiff's hospital, Detroit Medical Center Sinai-Grace Hospital, where he received treatment for his injuries.  It was later determined that the vehicle Dantzler was operating when the accident occurred had been stolen from its owner, Anthony Martin, in October or November 2020.  Dantzler and Martin did not know each other.

Plaintiff filed this action to recover PIP benefits under the no-fault act, MCL 500.3101 *et seq*., for the medical treatment and services it provided to Dantzler for his injuries from the accident.

As relevant to this appeal, defendant subsequently filed a motion for summary disposition under MCR 2.116(C)(10).  Defendant argued that plaintiff's claim was precluded by MCL 500.3113(a), which provides that a person is not entitled to PIP benefits if, at the time of the accident, the person willingly operated a vehicle that was taken unlawfully and the person knew or should have known that the vehicle was unlawfully taken.  Defendant argued that Dantzler unlawfully took the Charger because he was operating the vehicle without a license and while under the influence of alcohol above the legal limit when the accident occurred and, additionally, because he knew that he did not have permission to drive the vehicle at the time of the accident.  Because plaintiff's claim was predicated on Dantzler's right to recovery of PIP benefits and if he was precluded from recovery under MCL 500.3113(a), plaintiff's claim was also precluded.

After hearing oral argument on defendant's motion, the trial court ruled that Dantzler unlawfully took the Charger within the meaning of MCL 500.3113(a) when Dantzler operated the Charger while under the influence of alcohol in the early morning hours of February 28, 2021.  The trial court, therefore, granted defendant's motion for summary disposition on the basis that MCL 500.3113(a) precluded plaintiff's claim.  Plaintiff now appeals.

---

[1] State Farm Mutual Automobile Insurance Company (State Farm) was dismissed from the case in the trial court and is not a party to the instant appeal.  No appearance was filed on behalf of the Unnamed Assignee of the MAIPF in the trial court or in this Court.  Thus, our use of the singular term "defendant" refers only to the MAIPF.

## II. STANDARD OF REVIEW

"A trial court's decision on a motion for summary disposition is reviewed de novo." *Parise v Detroit Entertainment, LLC*, 295 Mich App 25, 27; 811 NW2d 98 (2011). Summary disposition is properly granted under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013) (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 139-140 (quotation marks and citation omitted). Questions involving statutory interpretation present issues of law that this Court review's de novo. *Parise*, 295 Mich App at 27.

## III. ANALYSIS

Plaintiff argues that the trial court erred by determining that Dantzler unlawfully took the Charger within the meaning of MCL 500.3113(a) and granting summary disposition in defendant's favor, thereby precluding plaintiff from recovering PIP benefits for its treatment of Dantzler's injuries. Plaintiff argues that the exclusion from PIP benefits contained in MCL 500.3113(a) requires an unlawful *taking*, not merely an unlawful use, for the exclusion to apply. Further, plaintiff argues that the relevant inquiry for determining whether an unlawful taking occurred must focus on how the person gained possession of the vehicle rather than how the vehicle was used after obtaining possession. Plaintiff maintains that Dee, the ostensible owner of the Charger, voluntarily gave Dantzler possession of the vehicle for purposes of making repairs and that Dantzler's subsequent use of the vehicle while it was in his possession, even if his use was not authorized, could not somehow transform Dantzler's possession of the vehicle into an unlawful *taking* for purposes of MCL 500.3113(a).

Resolution of this issue involves statutory interpretation. Our task when construing a statute is to discern the Legislature's intent, and we begin with the statutory language. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Id*.

"The no-fault act permits an insurer to avoid coverage of PIP benefits under certain enumerated circumstances, such as those listed in MCL 500.3113." *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 9; 972 NW2d 860 (2021) (quotation marks and citation omitted). In relevant part, MCL 500.3113 provides as follows:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

(a) The person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully. [MCL 500.3113(a).]

The exclusion in this statutory provision "applies to any person (1) 'willingly operating or willingly using a motor vehicle or motorcycle' that (2) was unlawfully taken by someone, and (3) the person seeking benefits 'knew or should have known' that the motor vehicle was taken unlawfully." *Ahmed*, 337 Mich App at 10. Hence, "a person who willingly operates or willingly uses a motor vehicle that *someone* took unlawfully is disqualified from eligibility for benefits if the person 'knew or should have known' that the taking of the motor vehicle was unlawful; stated differently, such a person is disqualified from eligibility for benefits unless the person had no reason to know that the taking was unlawful." *Id*. at 23 (emphasis added). " 'The first level of inquiry when applying MCL 500.3113(a) always concerns whether the taking of a vehicle was unlawful, and if the taking was lawful, the inquiry ends because the statute is inapplicable.' " *Id*. at 19, quoting *Monaco v Home-Owners Ins Co*, 317 Mich App 738, 747; 896 NW2d 32 (2016).

In *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515-517; 821 NW2d 117 (2012), our Supreme Court construed MCL 500.3113(a) and specifically ascertained the Legislature's intended meaning of the phrase "taken unlawfully." The Court held:

In determining the Legislature's intended meaning of the phrase "taken unlawfully," we must accord the phrase its plain and ordinary meaning, and we may consult dictionary definitions because the no-fault act does not define the phrase. The word "unlawful" commonly means "not lawful; contrary to law; illegal," and the word "take" is commonly understood as "to get into one's hands or possession by voluntary action." When the words are considered together, the plain meaning of the phrase "taken unlawfully" readily embraces a situation *in which an individual gains possession of a vehicle contrary to Michigan law*.

The Michigan Penal Code contains several statutes that prohibit "takings," including two that prohibit "joyriding," MCL 750.413 and MCL 750.414. MCL 750.413 states that "[a]ny person who shall, wilfully and without authority, take possession of and drive or take away . . . any motor vehicle, belonging to another, shall be guilty of a felony . . . ." Similarly, MCL 750.414 provides in pertinent part that "[a]ny person who takes or uses without authority any motor vehicle without intent to steal the same, or who is a party to such unauthorized taking or using, is guilty of a misdemeanor . . . ." Thus, both joyriding statutes make it unlawful to take any motor vehicle without authority, effectively defining an unlawful taking of a vehicle as that which is unauthorized.

Because a taking does not have to be larcenous to be unlawful, the phrase "taken unlawfully" in MCL 500.3113(a) applies to *anyone* who takes a vehicle without the authority of the owner, regardless of whether that person intended to steal it. [*Spectrum Health*, 492 Mich at 515-518 (citations omitted; first emphasis added; alterations and ellipses in original).]

The Court in *Spectrum Health* further explained that "[t]he 'authority' referred to in the joyriding statutes is obviously the authority of the owner of the vehicle" and that "[a]ccordingly, for purposes of MCL 500.3113(a), a vehicle is 'unlawfully taken' if it is taken without the authority of its owner." *Id.* at 518 n 25. As the Supreme Court recognized, there must be *both* an unlawful act *and a taking* for the vehicle to have been "taken unlawfully." *Id.* at 516-517. The Court defined the phrase "taken unlawfully" to "embrace[] a situation in which an individual *gains possession* of a vehicle *contrary to Michigan law*." *Id.* at 517 (emphasis added). Accordingly, there must be a nexus between the unlawful act and the attainment of possession. As the Court recognized in *Spectrum Health*, a mere *use* of the vehicle that is unlawful but that is unconnected to attaining possession does not satisfy the definition of "taken unlawfully" for purposes of MCL 500.3113(a):

> MCL 750.414 contains disjunctive prohibitions: it prohibits someone from "tak[ing]" a motor vehicle "without authority" and, alternatively, it prohibits someone from "us[ing]" a motor vehicle "without authority." Thus, it is possible to violate MCL 750.414 without unlawfully *taking* the vehicle and, as a result, not all violations of MCL 750.414 necessarily constitute unlawful *takings* within the meaning of MCL 500.3113(a). Nevertheless, a taking that violates MCL 750.414 qualifies for the exclusion under MCL 500.3113(a) because it is an *unlawful* taking. [*Spectrum Health*, 492 Mich at 517 n 24.]

Although MCL 500.3113(a) has been amended since the Supreme Court issued its opinion in *Spectrum Health*, this Court has already held that "the key term, 'taken unlawfully,' has the same meaning under the present version as it had under the old version." *Ahmed*, 337 Mich App at 10.

In accord with this Court's obligation to follow holdings of our Supreme Court, *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016), this Court has continued to recognize the distinction between *using* and *taking* for purposes of MCL 500.3113(a), *Ahmed*, 337 Mich App at 5, 11-13 (stating that although there was no question that the plaintiff was unlawfully using and operating the rented vehicle at the time of the accident when he drove the vehicle without holding a valid license, contrary to the express prohibition in the rental agreement between the car rental company that owned the vehicle and the plaintiff's spouse who rented the vehicle, it was nonetheless necessary to "determine whether these facts amounted to an unlawful 'taking,' in other words, that plaintiff got the [vehicle] 'into one's hands or possession by voluntary action' "). This Court observed in *Ahmed*, "as *Spectrum Health* noted generally, any violation of the criminal law that *leads to a taking* of a motor vehicle will constitute an 'unlawful taking' for purposes of MCL 500.3113(a)." *Ahmed*, 337 Mich App at 11 n 5 (emphasis added); accord *Swoope v Citizens Ins Co of the Midwest*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364924); slip op at 3. "MCL 500.3113(a) examines the legality of the taking from the driver's perspective[.]" *Ahmed*, 337 Mich App at 12 (quotation marks and citations omitted; alteration in original). Again, because an "unlawful taking" for purposes of MCL 500.3113(a) occurs when a violation of the criminal law "leads to a taking of a motor vehicle," there must be a nexus between the particular illegal act and obtaining possession of the vehicle.

Here, the record reflects that when Dantzler drove the Charger on the night of the accident, he did not have a valid driver's license and had consumed alcohol earlier in the evening. The

traffic crash report indicates that his blood-alcohol content was .133. Plaintiff does not appear to contest this evidence. Undisputedly, these facts support a conclusion that Dantzler's *use* of the vehicle was unlawful. See MCL 257.301(1) (stating in relevant part that "an individual shall not drive a motor vehicle on a highway in this state unless that individual has a valid operator's or chauffeur's license");[2] MCL 257.625(1)(b), as amended by 2017 PA 153 (generally prohibiting, at the time of the accident in this case, the operation of a vehicle by a person with "an alcohol content of 0.08 grams or more per 100 milliliters of blood"). Thus, to determine whether Dantzler was disqualified from eligibility for PIP benefits under MCL 500.3113(a), the issue becomes whether there was any *taking* of the Charger and whether there was a nexus between any taking—i.e., how Dantzler *gained possession*—of the Charger and the unlawful acts committed by Dantzler. *Spectrum Health*, 492 Mich at 17; *Ahmed*, 337 Mich App at 10, 11 n 5. Hence, we must consider whether Dantzler's particular violations of the criminal law actually led "to a taking of [the] motor vehicle" such that an "unlawful taking" for purposes of MCL 500.3113(a) occurred. *Ahmed*, 337 Mich App at 11 n 5; *Swoope*, ___ Mich App at ___; slip op at 3.

It is undisputed in this case that the Charger had been stolen from Martin, who was the actual owner. There is no evidence or allegation in this case that Dantzler was involved in the theft or that Dantzler and Martin knew each other. The current version of MCL 500.3113(a) requires a showing that the vehicle was unlawfully taken by *someone*; disqualification from PIP benefits under this statutory provision is not limited only to the person who actually took the vehicle unlawfully. *Ahmed*, 337 Mich App at 10. The undisputed evidence thus reflects that there was an unlawful taking by *someone* because the Charger was taken from its owner, Martin, without Martin's authority. *Spectrum Health*, 492 Mich at 518 ("[T]he phrase 'taken unlawfully' in MCL 500.3113(a) applies to *anyone* who takes a vehicle without the authority of the owner, regardless of whether that person intended to steal it."); *Ahmed*, 337 Mich App at 12 (citing *Spectrum Health* for the proposition that there must be a threshold determination that the vehicle was taken from its owner without the owner's authority).

However, that does not end the analysis, because the statute also requires that the person who was operating the vehicle "knew or should have known that the motor vehicle . . . was taken unlawfully" in order for that person to be disqualified from PIP benefits. MCL 500.3113(a); *Ahmed*, 337 Mich App at 10. This Court discussed this scienter requirement in *Ahmed*, concluding that "a person who willingly operates or willingly uses a motor vehicle that someone took unlawfully is disqualified from eligibility for benefits if the person 'knew or should have known' that the taking of the motor vehicle was unlawful" and that such a person is *not* disqualified from benefits if "the person had no reason to know that the taking was unlawful." *Id*. at 23. Here, there is no contention and we cannot find within the record any evidence that Dantzler knew that the Charger had been stolen or that he had any indication to suspect that it could have been stolen. It is the insurer's burden to establish the requirements of MCL 500.3113(a) in order to disqualify a person from eligibility for PIP benefits. *Monaco v Home-Owners Ins Co*, 317 Mich App 738, 746; 896 NW2d 32 (2016). Thus, because there is no evidence that Dantzler had "reason to know" that the Charger had been taken unlawfully from Martin at the time that the Charger was given to

---

[2] Although MCL 257.301 has been amended since the date of the accident at issue in this case, there were no changes to the language in Subsection (1). 2021 PA 71.

Dantzler by Dee to have repairs performed, Dantzler cannot be disqualified from eligibility for PIP benefits under MCL 500.3113(a) on the basis of the initial unlawful taking from Martin. *Ahmed*, 337 Mich App at 23.

The next question becomes whether, as the trial court concluded, Dantzler's unlawful *use* of the Charger—driving it without a license and while intoxicated—after the Charger had already come into his possession constitutes an unlawful taking for purposes of MCL 500.3113(a) that could disqualify Dantzler from eligibility for benefits.[3] Defendant argues that there was an unlawful taking because, in addition to the obvious fact that Dantzler did not have permission from Martin—the true owner—to use the Charger, Dantzler also did not have permission from Dee—the Charger's ostensible owner—to drive the vehicle in the middle of the night while intoxicated, unlicensed, and carrying two minor passengers.

In *Landon v Titan Ins Co*, 251 Mich App 633, 635; 651 NW2d 93 (2002), the plaintiff was involved in a motor vehicle accident while driving a vehicle owned by her friend. The friend had left the vehicle parked in the plaintiff's yard, with the plaintiff's permission, while advertising the vehicle for sale. *Id*. The friend left the vehicle unlocked, with the keys under the floor mat, so the plaintiff could let potential buyers test drive the vehicle, but the friend did not expressly permit or prohibit the plaintiff's use of the vehicle. *Id*. at 636. When the plaintiff drove the vehicle on the day of the accident, she believed that her friend would not have objected, but the plaintiff later conceded that her friend probably did not expect the plaintiff to drive the vehicle. *Id*.

This Court concluded that the plaintiff could not have taken possession of the vehicle without authority, in violation of MCL 750.413, because the plaintiff's friend had voluntarily placed the vehicle in the plaintiff's possession and had therefore made the plaintiff a bailee of the vehicle. *Id*. at 641-643. Furthermore, this Court also held that after being given lawful possession of the vehicle, subsequent use of the vehicle that exceeded the authority granted by the owner did not constitute an unlawful taking for purposes of 500.3113(a), even if it may have been a violation of MCL 750.414. *Id*. at 643-646. The Court reasoned that "it is the unlawful nature of the *taking*, not the unlawful nature of the *use*, that forms the basis of the exclusion under subsection 3113(a)." *Id*. at 646 (quotation marks and citation omitted). We concluded that the trial court had erred as a matter of law by ruling that the plaintiff had unlawfully taken the friend's vehicle for purposes of MCL 500.3113(a). *Id*. at 650.

Similarly, in *State Farm Mut Auto Ins Co v Hawkeye-Security Ins Co*, 115 Mich App 675, 677; 321 NW2d 769 (1982), an employee was injured in a motor vehicle accident while he was using a vehicle that was owned by his employer. Although the employer had provided the vehicle to the employee to use "on company business during regular business hours" and did not authorize the employee to use the vehicle for personal reasons, the employee was using the vehicle for his own personal use and outside the scope of his employment when the accident occurred. *Id*. at 677-678. This Court held that the exclusion in MCL 500.3113(a) was inapplicable because "the original taking of the motor vehicle in which [the employee] was injured was not unlawful. *Id*. at 682. The Court explained that the employee "took the vehicle lawfully and within the scope of his

---

[3] The trial court appeared to focus only on Dantzler's unlawful act of driving while intoxicated.

employment" but "continued to use the vehicle for his own purposes after working hours, and was injured while doing so." *Id*. In reaching this conclusion, the Court rejected the insurance company's argument that the employee was ineligible for benefits under MCL 500.3113(a) because his use of the vehicle for personal reasons was unauthorized and, thus, unlawful. *Id*. at 681-682.

In *Monaco*, 317 Mich App at 741, this Court held that "the phrase 'taken unlawfully,' as employed in MCL 500.3113(a), does not encompass the unlawful *use or operation* of a motor vehicle, just the unlawful *taking* of a vehicle." In that case, a 15-year-old was injured when she lost control of the vehicle she was driving. *Id*. She was driving alone, even though she only had a permit allowing her to drive "if accompanied by a licensed parent, guardian, or 21–year–old." *Id*. at 741-742. The vehicle was owned by the 15-year-old's mother, and there was evidence that the 15-year-old had been given permission to drive the vehicle unaccompanied at the time of the accident. *Id*. at 742-743. This Court framed the issue presented on appeal as follows:

> There is but one issue in this appeal that we must resolve. It concerns the legal question whether a person injured in a motor vehicle accident is barred from recovering PIP benefits under MCL 500.3113(a)—which generally precludes coverage when a person used a vehicle that he or she had "taken unlawfully"— when the owner of the vehicle permitted, gave consent to, or otherwise authorized the injured person to take and use the vehicle, but the injured person used the vehicle in violation of the law with the owner's knowledge. [*Id*. at 741.]

This Court answered that question in the negative. *Id*. at 748-749. Citing *Spectrum Health*, 492 Mich at 518 n 25, this Court stated that "the unlawful operation or use of a motor vehicle is simply not a concern in the context of analyzing whether the vehicle was taken unlawfully" for purposes of MCL 500.3113(a). *Id*. Accordingly, this Court concluded that there was not an unlawful taking under MCL 500.3113(a) because the 15-year-old driver only used the vehicle unlawfully but did not " 'gain[ ] possession of [the] vehicle contrary to Michigan law.' " *Id*. at 750, quoting *Spectrum Health*, 492 Mich at 517 (alterations in original). The Court in *Monaco* further reasoned that, "with respect to the language in MCL 500.3113(a), '[c]learly, the terms "take" and "use" are not interchangeable or even synonymous; obtaining possession of an object is very different from employing that object or putting it into service.' " *Monaco*, 317 Mich App at 749 (citation omitted; alteration in original).

Reading *Landon*, *State Farm*, and *Monaco* together, the rule that emerges is that the pertinent question in determining whether there was an unlawful taking under MCL 500.3113(a) is whether there was a voluntary transfer of possession of the vehicle, even if for a temporary period of time, and not whether the subsequent use of the vehicle by the person seeking PIP benefits exceeded the scope of the use authorized by the owner. This is consistent with the well-settled principle that there is a distinction between a "use" and a "taking" in this context. *Spectrum Health*, 492 Mich at 517 n 24; *Monaco*, 317 Mich App at 749; accord *Ahmed*, 337 Mich App at 13. When possession has been transferred voluntarily, even if temporarily, there has been no

"taking."[4] Thus, in those circumstances, a person's subsequent use, even if not authorized by the owner or if otherwise unlawful, does not constitute an unlawful taking under MCL 500.3113(a) because there is no nexus between that unlawful conduct and how the person gained possession of the vehicle. *Landon*, 251 Mich App at 641-646; *State Farm*, 115 Mich App at 681-682; *Monaco*, 317 Mich App at 748-750.

Here, Dantzler received the Charger from Dee to perform repairs on the vehicle. It was only after Dantzler had gained possession that he committed the unlawful acts of driving without a license and while intoxicated. However, those unlawful acts had no connection to the manner in which Dantzler gained possession of the Charger. Therefore, there was no "unlawful taking" for purposes of MCL 500.3113(a). The trial court erred by concluding to the contrary and granting summary disposition in favor of defendant.

This Court's recent decisions in *Ahmed* and *Swoope* do not require a different conclusion. In *Ahmed*, there was evidence that the vehicle's owner had expressly prohibited the plaintiff driver from taking and operating the vehicle and that the driver knew or should have known about the prohibition. *Ahmed*, 337 Mich App at 5-6, 13-15. The vehicle had been rented by the plaintiff's wife, and the terms of the rental agreement prohibited operation of the vehicle by a person without a driver's license. *Id*. at 5-6. The plaintiff did not have a valid driver's license, and he never read the rental agreement even though he knew that the car was rented and knew that the rental agreement existed. *Id*. at 5, 13. Nonetheless, the plaintiff drove the rental car and was involved in an accident. *Id*. at 5, 13-14. This Court held that the plaintiff took voluntary action to gain possession of the vehicle, drove the vehicle contrary to the owner's authorization as stated in the written terms of the rental agreement, and unlawfully took the vehicle within the meaning of MCL 500.3113(a). *Id*. at 13-15, 21. This Court further concluded that although the plaintiff was actually unaware of the terms of the rental agreement, he should have been aware of the term prohibiting unlicensed drivers such as himself from operating the vehicle because the plaintiff knew that the vehicle was rented, knew that a written rental agreement existed, should have known his driving status, and therefore was obligated to determine whether the rental agreement authorized a nonparty such as himself to take and operate the vehicle. *Id*. at 26.

In *Swoope*, the plaintiff was injured in an automobile accident while driving a car owned by the plaintiff's friend. *Swoope*, ___ Mich App at ___; slip op at 1. The plaintiff did not have a valid driver's license. *Id*. The vehicle's owner did not give the plaintiff permission to drive the

---

[4] In *Ahmed*, the panel stated that "while it is possible to possess or 'take' a car without 'operating' or driving it, such as by placing it on a flatbed truck and moving it, or by using a tow truck," then held: *"it is not possible to drive it without also taking it; the act of driving a car can only be accomplished by someone who is in possession of it and operating the controls." Ahmed*, 337 Mich App at 14. (emphasis added). Here, Dantzler received possession of the vehicle from Dee before he drove it and without "taking" it. When Dantzler drove the vehicle, he already had possession of the vehicle. " '[P]ossession' is not an act of limited duration; possession continues as long as someone exercises control over the thing possessed." *Id*. Hence, when Dantzler drove the vehicle in this case, there was not a "taking" because he already had possession and did not need to "gain" possession. *Spectrum Health*, 492 Mich at 517.

-9-

vehicle. *Id*. at ___; slip op at 4. The plaintiff knew that her license was suspended, and she did not take any steps to seek authorization from her friend to take the car. *Id*. This Court held that the plaintiff therefore unlawfully took the vehicle and should have known the taking was unlawful for purposes of MCL 500.3113(a). *Id*. at ___; slip op at 3-4.

Here, unlike the factual circumstances in *Ahmed* and *Swoope*, defendant has not cited any evidence that suggested Dantzler taking of possession of the Charger when it was left with him by Dee, was somehow unauthorized or unlawful. Defendant also does not claim that there were any factual indications that should have alerted Dantzler to the possibility that he had not been legitimately entrusted with possession of the Charger by the Charger's actual owner. Accordingly, the factual circumstances of this case are distinguishable from those in *Ahmed* and *Swoope*, and our conclusions in this case are consistent with the holdings in *Ahmed* and *Swoope*.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff having prevailed is entitled to costs. MCR 7.219(A).

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett

-10-