PRIESMAN v MERIDIAN MUTUAL INSURANCE COMPANY

Docket No. 89357. Argued March 3, 1992 (Calendar No. 2). Decided
September 22, 1992. Rehearing denied *post,* 1202.

Renee Priesman brought an action in the Ingham Circuit Court
against Meridian Mutual Insurance Company, her no-fault
insurer, alleging breach of contract for its failure to continue
paying medical expenses for Corey Warfield, her fourteen-year-
old son, for injuries he sustained in an automobile accident in
which he was driving her automobile without a license and
without her knowledge or consent. The court, Peter D. Houk,
J., granted the summary disposition for the defendant with
regard to Priesman because she lacked standing, amended the
complaint to name Corey as a plaintiff, and dismissed the case
with regard to Corey because the vehicle had been unlawfully
taken. The Court of Appeals, WEAVER, P.J., and BRENNAN and
NEFF, JJ., reversed in an opinion per curiam, holding that
§ 3114 of the no-fault act entitled him to benefits because he
was a relative of his mother domiciled in her household and he
did not lose that entitlement by virtue of using his mother's car
without her permission, that his use was not unlawful under
the no-fault act, and further that the Legislature did not intend
that § 3113(a) would apply under the circumstances of this case
(Docket No. 109752). The defendant appeals.

In an opinion by Justice LEVIN, joined by Chief Justice
CAVANAGH, and Justice MALLETT, with Justice BOYLE, concur-
ring only in the result, the Supreme Court: Affirmed the
judgment of the Court of Appeals.

Justice LEVIN, joined by Chief Justice CAVANAGH, and Justice
MALLETT would hold that, under the no-fault act, an underage,
unlicensed driver injured while driving a parent's automobile
without the parent's knowledge or consent may recover medical
benefits from the parent's no-fault insurer.

Affirmed.

Justice GRIFFIN, joined by Justices BRICKLEY and RILEY,
dissenting, stated that because the taking and use of the
automobile by the insured's son was unlawful under the joy-
riding statute, the insurer properly withheld payment of per-
sonal protection insurance benefits.

Section 3114(1) of the no-fault act provides for the payment

of personal protection insurance benefits for accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. Section 3113(a) excludes coverage if the automobile was taken or used unlawfully.

"Unlawfully" is not defined under the no-fault act. Unlawful use of an automobile under the joyriding statute, MCL 750.414; MSA 28.646, requires that the motor vehicle must have belonged to another, that it was taken or used without authority with the intention to take or use it, knowing that there was no authority to do so. Because the statute applies to any person, it precludes the inference of an exception for minors or family members. Conviction of joyriding is not a prerequisite to a finding of unlawful taking within the meaning of § 3113(a). Conduct that is proscribed by statute is unlawful without regard to whether that conduct ultimately results in a criminal conviction. In this case, Corey intentionally took and used his mother's automobile without permission or authority and with knowledge that he lacked permission or authority. Nor could he have had a reasonable belief that he was entitled to do so because he was not licensed and had never been allowed to use it. Under § 3113(a), absent a reasonable belief of entitlement to take and use an automobile, a person who is injured while using a motor vehicle taken unlawfully is excluded from no-fault coverage.

185 Mich App 123; 460 NW2d 244 (1990) affirmed.

*Nolan, Reincke, Thomsen & Villas, P.C.* (by *Lawrence P. Nolan*), for the plaintiffs.

*Howard & Howard Attorneys, P.C.* (by *James E. Lozier* and *James H. Geary*), for the defendants.

LEVIN, J. The question presented is whether an underage, unlicensed driver injured while driving his mother's automobile without her knowledge or consent may recover medical benefits from the no-fault insurer of her automobile. We agree with the Court of Appeals that he is entitled to recover no-fault medical benefits, and affirm.

I

Renee Priesman owned an automobile insured by Meridian Mutual Insurance Company. Her son, Corey Warfield, who was fourteen years old, took the automobile without her permission during the nighttime while she was sleeping. Corey picked up friends, was involved in an automobile accident, and one of his friends was killed.[1]

Corey sustained serious and severe bodily injuries, necessitating medical treatment at a hospital. Meridian paid billings by the hospital until six months after the accident, when it informed Priesman that it would not continue to pay because Corey had taken her vehicle without permission.

The circuit judge granted Meridian's motion for summary disposition with regard to Priesman on the ground that she lacked standing, granted a motion to amend the complaint to name Corey as a plaintiff, and granted Meridian's motion to dismiss with respect to Corey because the vehicle had been unlawfully taken. The Court of Appeals reversed.[2]

Meridian contended in the circuit court and the Court of Appeals that Corey was not entitled to no-fault medical benefits because an exception in

[1] Corey's mother was insured for public liability for $100,000, in excess of the amount required by the no-fault act. MCL 500.3131; MSA 24.13131. It appears that Meridian settled the claim of the personal representative of the person who was killed.

The civil liability act provides:

The owner shall not be liable, however, unless the motor vehicle is being driven with his or her express or implied consent or knowledge. It shall be presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her father, mother, brother, sister, son, daughter, or other immediate member of the family. [MCL 257.401(1); MSA 9.2101(1).]

[2] 185 Mich App 123; 460 NW2d 244 (1990).

the no-fault act provides that a person is not entitled to no-fault benefits if, at the time of the accident, he is using a vehicle that he had "taken unlawfully."[3] Meridian contended that Corey's taking of his mother's vehicle was "unlawful" because the Penal Code provides that it is a misdemeanor to take or use a vehicle "without authority."[4]

The Court of Appeals, observing that Corey had not been charged or convicted, stated that the question was whether the "mere fact of taking without permission by an underage driver who is the son of the owner and who lives in the owner's household is 'unlawful' under the no-fault act."[5] The Court observed that the term "unlawful" is not defined in the no-fault act, and said that, under § 3114[6] of the Insurance Code, Corey was

---

[3]    A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

(a) The person was using a motor vehicle or motorcycle which he or she had *taken unlawfully,* unless the person reasonably believed that he or she was entitled to take and use the vehicle.

(b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect.

(c) The person was not a resident of this state, was an occupant of a motor vehicle or motorcycle not registered in this state, and was not insured by an insurer which has filed a certification in compliance with section 3163. [MCL 500.3113; MSA 24.13113. Emphasis added.]

[4]    Any person who takes or uses without authority any motor vehicle without intent to steal the same, or who shall be a party to such unauthorized taking or using, shall upon conviction thereof be guilty of a misdemeanor . . . . [MCL 750.414; MSA 28.646.]

[5] 185 Mich App 126.
We agree with the signers of the dissenting opinion that "unlawfulness" does not depend on conviction of a crime, as set forth in the cases cited by the majority, *Fafinski v Reliance Ins Co,* 65 NY2d 990; 494 NYS2d 92; 484 NE2d 121 (1985), and *Gross v Allstate Ins Co,* 173 AD2d 772; 570 NYS2d 640 (1991).

[6] MCL 500.3114; MSA 24.13114. See n 12.

entitled to no-fault benefits because he was a relative of his mother domiciled in her household. The Court concluded that Corey did not lose that "entitlement by virtue of using his mother's car without her permission," and that his use was not "unlawful under the no-fault act": "We cannot say that the Legislature intended that § 3113(a) of the act would apply under the circumstances of this case."[7]

II

The no-fault automobile liability act[8] provides that a no-fault insurer is required to pay medical benefits, without limitation in amount or duration,[9] and other no-fault benefits[10] to any person who suffers accidental bodily injury arising out of the operation of a motor vehicle, without regard to fault.[11]

All persons,

—those who own vehicles and those who do not;

—those who insure a vehicle they own, and those who do not insure a vehicle that they own, unless a person who does not insure is injured while driving *that* uninsured vehicle;

—the spouse and a relative domiciled in the same household of an owner of a vehicle without regard to whether the owner has insured the vehicle;

[7] 185 Mich App 126.

[8] MCL 500.3101; MSA 24.13101.

[9] MCL 500.3107; MSA 24.13107.

[10] No-fault benefits are described in the statute as "personal protection insurance benefits," and include, in addition to medical benefits, benefits for "work loss," consisting of loss of income from work (MCL 500.3107; MSA 24.13107), and "survivor's loss," consisting of loss of "tangible things of economic value" that dependents of the deceased would have received for support. MCL 500.3108; MSA 24.13108.

[11] MCL 500.3105, 500.3112; MSA 24.13105, 24.13112.

—passengers, pedestrians, sidewalk gawkers, persons walking, sitting, or lying down in a parking lot or a field, and also those who become involved in a vehicular accident while in a structure

are entitled to recover full medical benefits without regard to fault and without regard to whether they or a family member has paid for no-fault coverage, under Michigan's most comprehensive no-fault act.[12]

It is in that context—full medical benefits, unlimited in amount for every person, including even a person who does not insure a vehicle he owns (except when driving *that* vehicle) and the spouse and relatives domiciled in the household of the owner of an uninsured vehicle *even when driving or riding as a passenger in that uninsured vehicle*

---

[12] The benefits are payable by the injured person's no-fault insurer if he owns a vehicle and has insured the vehicle, or by the no-fault insurer of his spouse or of a relative with whom he is domiciled. MCL 500.3114; MSA 24.13114. There are exceptions for injuries suffered by a person while an operator or a passenger in a vehicle operated in the business of transporting passengers, or where the accident is suffered while an occupant of a vehicle owned or registered by an employer. *Id.*

If neither the injured person nor a spouse or relative with whom he is domiciled has insured a vehicle, medical benefits are payable (excepting only if the injured person was driving an uninsured vehicle that he owns) by insurers of owners, registrants, or operators of other motor vehicles involved in the accident (MCL 500.3115; MSA 24.13115) or through the assigned claims plan if no policy of no-fault insurance is applicable to the injury, or if no policy of no-fault insurance applicable to the injury can be identified, or if the no-fault insurance applicable to the injury cannot be ascertained because of a dispute between two or more no-fault insurers, or if the only identifiable no-fault insurance applicable to the injury is, because of financial inability of one or more insurers, inadequate to provide benefits up to the maximum proscribed. MCL 500.3172; MSA 24.13172.

While § 3114 provides that a personal protection insurance policy "applies" to accidental bodily injury to a relative domiciled in the same household as the insured, §§ 3114, 3115, and 3172 are concerned primarily with identifying the no-fault insurer who "pays" the benefits. Other sections of the act, including § 3112, create the entitlement to no-fault benefits.

—that we assess the correctness of Meridian's contention that the Legislature did not intend that Corey recover medical benefits because, when he was fourteen years old, he took his mother's *insured* vehicle in the middle of the night, while she was sleeping, without her permission.

III

The Uniform Motor Vehicle Accident Reparations Act, a model act considered by the Legislature when the no-fault act was adopted, excepts from coverage a "converter"—a person who steals —*unless* covered under a no-fault policy issued to the converter or a spouse or other relative in the same household.[13]

---

[13]  § 21 [Converted Motor Vehicles].

Except as provided for assigned claims (Section 18[a][2]), a person who converts a motor vehicle is disqualified from basic or added reparation benefits, including benefits otherwise due him as a survivor, from any source other than an insurance contract under which the converter is a basic or added reparation insured, for injuries arising from maintenance or use of the converted vehicle. If the converter dies from the injuries, his survivors are not entitled to basic or added reparation benefits from any source other than an insurance contract under which the converter is a basic reparation insured. For the purpose of this Section, a person is not a converter if he uses the motor vehicle in the good faith belief that he is legally entitled to do so. [14 ULA 87-88.]

§ 1 [Definitions].

"Basic reparation insured" means:

(i) a person identified by name as an insured in a contract of basic reparation insurance complying with this Act (Section 7[d]); and

(ii) while residing in the same household with a named insured, the following persons not identified by name as an insured in any other contract of basic reparation insurance complying with this Act: a spouse or other relative of a named insured; and a minor in the custody of a named insured or of a relative residing in the same household with a named insured. A person resides in the same household if he usually makes his home in the same family unit, even though he temporarily lives elsewhere. [14 ULA 42.]

Meridian contends that the Legislature, in substituting "unlawfully" for the UMVARA language excepting *uninsured* converters from no-fault coverage, intended to except from no-fault coverage not only those who convert, but also joyriders like Corey, who was not a "converter" because he did not intend to steal and, thus, would not have been excepted under the UMVARA even if his mother was not insured.

While this is, indeed, arguable, the argument does not consider that there may be other explanations for the failure to adopt the UMVARA language.

The UMVARA exception permits, as Meridian acknowledges, a thief to recover no-fault benefits while driving the stolen vehicle if he is covered by insurance he purchased or by insurance purchased by his spouse or relative in the same household. The Legislature, in rejecting the language of the UMVARA exception, apparently decided to except from no-fault coverage a thief driving a stolen vehicle even if he or a spouse or relative had contributed to the no-fault pool of money.

The legislative purpose, in rejecting the UMVARA language, was thus to except from no-fault coverage thieves while driving stolen vehicles even if they or a spouse or relative had purchased no-fault insurance, and not necessarily to except joyriders from coverage. At the same time, the Legislature simplified the complex verbiage of the no-fault exception,[14] and thereby avoided litigation concerning what constitutes "conversion," a term of art in criminal and personal property law. That, in substituting "taken unlawfully" for "converts," the Legislature did not intend any substantial difference in scope or meaning from the prototypical

[14] See n 13.

UMVARA concept excepting thieves from no-fault coverage, appears to be the view of Judge Keeton and Professor Widiss, who read the Michigan provision as excepting a person injured in an automobile that he has "stolen."[15]

Legislators generally are also parents and sometimes grandparents. Some may have had experience with children, grandchildren, nephews, nieces, and children of friends who have used a family vehicle without permission. Some may have themselves driven a family vehicle without permission.

We are not persuaded that legislators, sitting at a drafting session, concluded that the evil against which the UMVARA exception was aimed was not adequate because it did not cover teenagers who "joyride" in their parents' automobiles, especially automobiles covered by no-fault insurance, in the context that countless persons would be entitled, under the legislation they were drafting, to no-fault benefits without regard to whether they are obliged to purchase no-fault insurance or, if obliged to insure, do in fact do so.[16]

It appears that in the twenty years since no-fault automobile insurance legislation was first enacted, no appellate court has decided that a person like Corey is not entitled to medical benefits.

---

[15] In describing the Michigan statute, they write:

> Exclusions from PIP coverage apply to the owner of a vehicle who does not purchase the mandatory coverage and who is injured in his own vehicle; a person injured in an automobile that *he has stolen;* and a non-resident who does not have coverage that has been certified by his insurer. [Keeton & Widiss, Insurance Law, § 410, p 422. Emphasis added.]

[16] Over fifteen percent of the motor vehicles that are licensed are not insured. See Best's Insurance Management Reports, *Uninsured Motorist Results by State,* Property/Casualty Release No. 5, February 26, 1990.

Affirmed.

CAVANAGH, C.J., and MALLETT, J., concurred
with LEVIN, J.

BOYLE, J., concurred in the result only.

GRIFFIN, J. Respectfully, I dissent. The majority
departs from the clear and unambiguous language
of § 3113(a) of the no-fault act[1] to reach a result
contrary to both its language and its legislative
history. Because I conclude that coverage was
excluded under the circumstances of this case, I
would reverse the decision of the Court of Ap-
peals.[2]

Because Corey Warfield is a relative of the
insured, domiciled in the same household, he
would ordinarily be eligible for the payment of
personal protection insurance benefits under
§ 3114(1) of the act.[3] However, § 3113(a) provides
an exclusion:

> A person is not entitled to be paid personal
> protection insurance benefits for accidental bodily
> injury if at the time of the accident any of the
> following circumstances existed:
> (a) The person was using a motor vehicle or
> motorcycle which he or she had taken *unlawfully,*
> unless the person reasonably believed that he or
> she was entitled to take and use the vehicle. [MCL
> 500.3113; MSA 24.13113. Emphasis added.]

The trial court found Corey's taking and use of
his mother's car unlawful under the joyriding

[1] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*
[2] 185 Mich App 123; 460 NW2d 244 (1990).
[3] MCL 500.3114(1); MSA 24.13114(1).

statute[4] and held that he was excluded from coverage under § 3113(a). However, despite the clear and unambiguous language of both § 3113(a) and the joyriding statute, the majority holds that the exclusion does not apply in this case, finding, in effect, a "family member" exception to both provisions. I disagree.

I

The no-fault act does not define "unlawfully." Where a word used is not defined in a statute, that word is to be given its plain and ordinary meaning.[5] According to one commonly used source, the word "unlawful" means "contrary to or prohibited by law; not authorized or justified by law . . . ." *Webster's Third New International Dictionary* (1966), p 2502. It is also defined as "acting contrary to, or in defiance of the law; disobeying or disregarding the law. While not necessarily implying the element of criminality, it is broad enough to include it." Black's Law Dictionary (5th ed), p 1377.

The joyriding statute provides, in pertinent part:

Any person who takes or uses without authority any motor vehicle without intent to steal the same, or who shall be a party to such unauthorized taking or using, shall upon conviction thereof be guilty of a misdemeanor . . . . [MCL 750.414; MSA 28.646.]

The elements of unlawful use of an automobile under this provision are:

---

[4] MCL 750.414; MSA 28.646.

[5] *Bingham v American Screw Products Co*, 398 Mich 546, 562; 248 NW2d 537 (1976). See also MCL 8.3a; MSA 2.212(1): "[W]ords and phrases shall be construed and understood according to the common and approved usage of the language . . . ."

1) The motor vehicle must have belonged to another.

2) Defendant must have taken or used the motor vehicle.

3) The taking or using must have been done without authority.

4) Defendant must have intended to take or use the vehicle, knowing that he had no authority to do so.[6]

The undisputed facts of this case satisfy each of the elements of a violation of MCL 750.414; MSA 28.646. Corey Warfield took and used an automobile belonging to his mother. It is conceded that he did not have permission or authority to drive his mother's car, and that he knew he did not have permission or authority to drive the car.[7] Nor could he have had a reasonable belief that he was entitled to take and use his mother's car, since he was not licensed and had never been allowed to use the car.[8]

In reversing the trial court, the Court of Appeals

---

[6] *People v Crosby,* 82 Mich App 1, 3; 266 NW2d 465 (1978).

[7] The parties' stipulation of facts included the following:

12. Plaintiff admits that she did not give permission to her 14-year-old son to take the automobile.

13. Plaintiff admits that her son took the automobile while she was asleep in the evening.

14. At no time previously did Plaintiff ever give her son permission to take the automobile.

15. Corey Warfield was not licensed to operate a motor vehicle, nor did he have any instruction with regard to the operation of a motor vehicle.

16. Corey Warfield knew at the time he took Plaintiff's automobile on or about April 19, 1986, that he was taking the automobile without permission of its owner, Plaintiff.

[8] In addition, because Corey was not licensed, his mother could not legally permit him to drive the car. Section 325 of the Motor Vehicle Code provides that "[i]t shall be unlawful for any person to cause or knowingly permit any minor to drive a motor vehicle upon a highway as an operator, unless the minor has first obtained a license to drive . . . ." MCL 257.325; MSA 9.2025.

panel suggested that Corey's conduct was not un-lawful because he was neither charged with nor convicted of violating the joyriding statute, and was a member of the vehicle owner's family.[9] However, conduct that is proscribed by statute is unlawful without regard to whether that conduct ultimately results in a criminal conviction. This view is consistent with the results reached in other states that have considered the issue.[10] Section 3113(a) does not require a criminal conviction as a prerequisite to a finding that a taking was unlawful, and I would not read that requirement into the statute. Moreover, the joyriding statute, applicable to "any person" who takes a motor vehicle without authority, clearly precludes the inference of an exception for minors or family members.

## II

When the language of a statute is certain, clear, and unambiguous, it is to be applied as written.[11] While our task is to discern and give effect to legislative intent, where the statute is unambigu-

[9] 185 Mich App 125-126.

[10] *Gross v Allstate Ins Co,* 173 AD2d 772; 570 NYS2d 640 (1991) (exclusion for injuries sustained while committing a felony does not require a conviction); *Fafinski v Reliance Ins Co,* 65 NY2d 990, 992; 494 NYS2d 92; 484 NE2d 121 (1985) (requiring a conviction as a prerequisite to application of statutory exclusion "contravenes the legislative purposes of denying coverage for losses resulting from violations of the law and of keeping premiums low") (citations omitted); *Kaplowitz v State Farm Mutual Ins Co,* 201 NJ Super 593, 598; 493 A2d 637 (1985) ("[T]he operation of the prohibition against receipt of benefits turns solely on the nature of the act committed by the person, not on the outcome of proceedings within the criminal justice system").

[11] *Achtenberg v East Lansing,* 421 Mich 765, 770; 364 NW2d 277 (1985); *Browder v Int'l Fidelity Ins Co,* 413 Mich 603, 611; 321 NW2d 668 (1982).

ous this intent is to be gleaned from the language of the statute itself.[12]

The majority departs from these principles to conclude that because legislators "generally are also parents and sometimes grandparents" and "[s]ome may have had experience with children, grandchildren, nephews, nieces, and children of friends who have used a family vehicle without permission," (*ante,* p 68) they did not intend to exclude coverage in cases such as this. Although such an argument may have emotional appeal, it is not supported by the language of § 3113(a), nor by the legislative history of that provision.[13]

The present language of § 3113(a) first appeared in 1971 with the introduction of SB 782.[14] Shortly thereafter, a House substitute bill was introduced, which provided that "a person who *converts* a motor vehicle is disqualified from basic or added reparation benefits . . . from any source other than an insurance policy under which the con-

___

[12] *Storey v Meijer, Inc,* 431 Mich 368, 376; 429 NW2d 169 (1988).

[13] Although we recognize that the family is of special importance in our society, it cannot be assumed that the relationship among members of every family is harmonious and that criminal acts never are committed by family members against one another. In addition, in cases such as this one the parent has a strong financial incentive to minimize or disregard the criminal nature of a child's act, regardless of the quality of the family relationship. Thus, the proper guide for this Court's interpretation is not the general or ideal role of the family in our society, but the specific language of the statute selected by the Legislature.

[14] In 1971, several other bills were introduced with the purpose of establishing a no-fault insurance system in Michigan. One bill, similar to the Uniform Motor Vehicle Reparations Act, provided that "a person whose taking and using a vehicle of another is a conversion of that vehicle cannot qualify as an insured" unless the converter had a good-faith belief that he was legally entitled to take and use the vehicle *or* was named as an insured in a policy on that vehicle. SB 520, § 3516. HB 4734, § 3015, would have allowed insurers to exclude from coverage a person who: a) intentionally caused the injury, b) drove under the influence of alcohol or drugs, c) knowingly used a motor vehicle without authority, d) drove without a license, e) raced or drove on a bet, and f) attempted to elude apprehension by a police officer. Neither of these bills was passed.

verter is a basic or added reparation insured."[15]
This language is identical to that found in § 21 of
the Uniform Motor Vehicle Reparations Act (UM-
VARA),[16] a model no-fault act.[17] However, our Senate
did not approve the language of the House substi-
tute. Instead, both houses adopted a conference
report enacting SB 782 with the present language
of § 3113(a).[18]

In its current form, § 3113(a) differs from § 21 of
the UMVARA in two significant ways. First, § 21
imposes a disqualification only when there is a
"conversion" of the insured automobile, while
§ 3113(a) denies benefits to a person injured while
using a motor vehicle that he has taken "unlaw-
fully."[19] Second, under the UMVARA, a person who

[15] House substitute for SB 782, § 3136 (emphasis added).

[16] 14 ULA 87-88.

[17] Language similar to § 21 has been adopted by several other no-
fault states. See, e.g., Conn Gen Stat Ann 38a-375; Minn Stat Ann
65B.58; Ky Rev Stat Ann 304.39-190. In those states, a minor relative
who converts a motor vehicle is entitled to no-fault benefits as a basic
reparation insured. Of course, Corey would be entitled to such bene-
fits under his mother's policy if the corresponding provision in Michi-
gan's no-fault act were similar, but it is not.

[18] 1972 Senate Journal 1944, 2005.

[19] The terms conversion and unlawful are not coextensive. Conver-
sion is a civil wrong, which this Court has defined as " 'any distinct
act of dominion wrongfully exerted over another's personal property
in denial of or inconsistent with his rights therein.' " *Thoma v Tracy
Motor Sales, Inc,* 360 Mich 434, 438; 104 NW2d 360 (1960), quoting
*Nelson & Witt v Texas Co,* 256 Mich 65, 70; 239 NW 289 (1931).
Likewise, 1 Restatement Torts, 2d, § 222A, p 431, defines conversion
as "an intentional exercise of dominion or control over a chattel
which so seriously interferes with the right of another to control it
that the actor may justly be required to pay the other the full value
of the chattel." In contrast, the term unlawful encompasses any
illegal taking, even a less serious taking that would not constitute
conversion, e.g., using a vehicle for a brief joyride with the intent to
return it. See 1 Restatement Torts, 2d, § 227, pp 443-444, and accom-
panying comment. In addition, the mental element that excuses the
taking of a vehicle is different under the UMVARA than under
§ 3113(a). The comment to § 6 of the UMVARA explains that "one who
takes a vehicle without permission is not a converter . . . if he has
an *honest* belief (whether or not that belief was reasonable) that he
has permission to do so." 14 ULA 65. (Emphasis added.) To avoid the

converts a motor vehicle is entitled to benefits under his own policy or under another policy if he is a basic reparation insured.[20] However, under § 3113(a) a person who takes an automobile unlawfully cannot collect benefits under any no-fault policy.

Our Legislature chose to adopt an exclusion from no-fault coverage where the taking and use of a motor vehicle was "unlawful."[21] Before doing so, it had the opportunity to consider several versions of § 3113(a), one of which would have provided coverage for Corey under his mother's policy. In addition, the UMVARA was before it for guidance. However, the Legislature chose to depart from the UMVARA when it adopted the language in § 3113(a). Under these circumstances, I cannot conclude that the Legislature intended any result other than the result required by the clear and unambiguous language of the statute: Any person

§ 3113(a) exclusion, however, a person must have a "reasonable" belief that he was entitled to take and use the vehicle.

[20] The UMVARA, § 1(a)(3), defines a "basic reparation insured" as a named insured and, if residing in the same household as a named insured, "a spouse or other relative of a named insured; and a minor in the custody of a named insured or of a relative residing in the same household with a named insured." 14 ULA 42.

[21] The exclusion ultimately chosen by our Legislature is unique among those states that have enacted no-fault laws. While at least three states have copied the approach of the UMVARA, requiring coverage for an insured even where he has converted a motor vehicle, see n 17, other states have refused to require such coverage. In Colorado a no-fault insurer may exclude from coverage any person injured while "operating a motor vehicle as a converter without a good faith belief that he is legally entitled to operate or use such vehicle." Colo Rev Stat 10-4-712(2)(b). Other states provide an exclusion where a person is injured while knowingly occupying a stolen vehicle, Md Code Ann, Ins Art 48A, § 545(a)(2); NY Ins Law 5103(b)(3)(iii), or during the commission of a felony, Fla Stat Ann 627.736(2)(b)(2); NJ Stat Ann 39:6A-7(1); NY Ins Law 5103(b)(3)(i); Utah Code Ann 31A-22-309(2)(a)(iii)(B). Five states provide for exclusions from coverage for injuries sustained by a person operating a motor vehicle without the permission or consent of the insured, Fla Stat Ann 627.736(2)(a); Kan Stat Ann 40-3108(a); NJ Stat Ann 39:6A-7(b)(2); ND Cent Code 26.1-41-07(1); Utah Code Ann 31A-22-309(2)(a)(ii).

who takes a vehicle unlawfully is excluded from no-fault coverage if he is injured while using that vehicle. Like the joyriding statute, § 3113(a) contains no exception for minors or family members.

The majority contends that the Legislature's purpose in rejecting the UMVARA language was to exclude only car thieves from coverage, and to simplify the language of the exclusion. (*Ante,* pp 67-68.) I disagree. If the Legislature had intended to limit the operation of § 3113(a) to car thieves, it could have stated simply that a "car thief" or one who has "stolen" a vehicle is not entitled to personal protection insurance benefits. It did not. Moreover, if the Legislature had intended to so limit the exclusion, the language "unless the person reasonably believed that he or she was entitled to take and use the vehicle" would be superfluous.

Because Corey's taking and use of his mother's car was unlawful under the provisions of the joyriding statute, I would hold, in accordance with § 3113(a) of the no-fault act, that Meridian properly withheld payment of personal protection insurance benefits.

Brickley and Riley, JJ., concurred with Griffin, J.