CAVANAGH, J.
(dissenting). I respectfully dissent from the majority’s decision to reject the well-established caselaw interpreting the availability of personal protection insurance (PIP) benefits under MCL 500.3113(a). Instead, I would reaffirm the “chain of permissive use” doctrine as well as the interpretation of MCL 500.3113(a) from Priesman v Meridian Mut Ins Co, 441 Mich 60; 490 NW2d 314 (1992). Because the Court of Appeals panels in these cases correctly applied these principles, I would affirm the Court of Appeals’ judgment in both cases.
Under MCL 500.3113(a), an injured person is barred from recovering PIP benefits if the injured person “was using a motor vehicle or motorcycle which he or she had taken unlawfully . . ..” (Emphasis added.) In Priesman, the lead opinion held that the insured’s teenage son, who drove his mother’s vehicle without express permission, had not taken the vehicle unlawfully for purposes of MCL 500.3113(a). Priesman’s analysis formally became part of Michigan’s caselaw when it was adopted by the Court of Appeals in Butterworth Hosp v Farm Bureau Ins Co, 225 Mich App 244; 570 NW2d 304 *539 (1997). Thus, in accordance with MCR 7.215(J)(1),[1] the Court of Appeals in Progressive Marathon Ins Co v DeYoung, unpublished opinion per curiam of the Court of Appeals, issued May 24, 2011 (Docket No. 296592), accurately applied Priesman’s progeny as binding case-law to conclude that MCL 500.3113(a) does not prohibit Ryan DeYoung from recovering PIP benefits.
The majority now reverses the Court of Appeals in Progressive and discards Priesman and its progeny, claiming that Priesman erroneously interpreted MCL 500.3113(a). The majority’s reading of Priesman is flawed, however. To begin with, the majority inaccurately claims that Priesman “stray[ed] from” and is thus entirely divorced from the statutory language in MCL 500.3113(a). Ante at 534. Rather, like the majority opinion in this case, Priesman focused on the requirement that the vehicle be “taken unlawfully” in order to trigger the exclusion under MCL 500.3113(a).
Priesman gave meaning to this phrase by reviewing the Uniform Motor Vehicle Accident Reparations Act (UMVARA). Contrary to the majority’s claims, consideration of the UMVARA was an entirely logical approach to determining the legislative intent behind MCL 500.3113(a) because, as the lead opinion in Priesman explained, MCL 500.3113(a) was modeled after a provision in the UMVARA. Accordingly, an obvious method for determining the legislative intent behind MCL 500.3113(a) and the plain meaning of the words used was to determine what the Legislature intended to *540 accomplish by modifying the language of the model provision from which MCL 500.3113(a) was ultimately crafted. Thus, the majority is incorrect when it implies that Priesman “reified] on [a] model act[]... rather than the clear language of [the] actual statute at issue.” Ante at 530. Rather, to define the critical phrase used in the statute[], Priesman merely considered the modifications that the Legislature made to the model act that was the starting point for the statute that was eventually enacted. Notably, Priesman did not break new ground in considering the UMVARA; indeed, this Court has previously considered the UMVARA as a source of guidance in construing provisions of the no-fault act. See, e.g., MacDonald v State Farm Mut Ins Co, 419 Mich 146; 350 NW2d 233 (1984), and Thornton v Allstate Ins Co, 425 Mich 643, 391 NW2d 320 (1986); see, also, Donajkowski v Alpena Power Co, 460 Mich 243, 257 n 14; 596 NW2d 574 (1999) (finding the fact that the Legislature deviated from a model act “significant to any good-faith effort to give meaning to the Legislature’s intent”).[2]
*539 A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1,1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals....
*540 Priesman specifically focused on the fact that the UMVARA “except[ed] from coverage a ‘converter’ — a person who steals — unless covered under a no-fault policy issued to the converter or a spouse or other relative in the same household.” Priesman, 441 Mich at 66. Priesman concluded that
*541 [t]he legislative purpose, in rejecting the UMVARA language, was thus to except from no-fault coverage thieves while driving stolen vehicles even if they or a spouse or relative had purchased no-fault insurance, and not necessarily to except joyriders from coverage. At the same time, the Legislature simplified the complex verbiage of the no-fault exception, and thereby avoided litigation concerning what constitutes “conversion,” a term of art in criminal and personal property law. [Id. at 67 (emphasis added).]
Accordingly, Priesman definitively concluded that the phrase “taken unlawfully” included car thieves but not those who simply drive a vehicle without express permission and without the intent to steal the vehicle. Priesman also concluded that “in substituting ‘taken unlawfully’ for ‘converts,’ the Legislature did not intend any substantial difference in scope or meaning from the prototypical UMVARA concept excepting thieves from no-fault coverage . ...” Id. at 67-68.[3]
In summary, Priesman closely considered the critical phrase within MCL 500.3113(a) — “taken unlawfully”— and merely acted to define that phrase, which the majority admits is not defined in the statute. Moreover, Priesman considered a logical source for that definition, given the legislative process that created MCL 500.3113(a). Accordingly, it appears that the majority’s true disagreement with Priesman is that Priesman simply defined the phrase “taken unlawfully” more narrowly than the major *542 ity would like. This is not a sufficient justification for the majority’s decision to supplant more than 15 years of this state’s jurisprudence.
The majority also argues that it is proper to consider the Michigan Penal Code, MCL 750.1 et seq., to give meaning to the phrase “taken unlawfully.” Ironically, this approach runs afoul of the majority’s conclusion that Priesman erred because it considered sources other than the statutory text at issue. Other than the majority’s strained exaggeration of its carefully selected dictionary definitions, there is no indication that it is proper to resort to the Penal Code to give meaning to a specific phrase in the no-fault act. It is axiomatic, however, that “[w]hen considering the correct interpretation, the statute must be read as a whole” and that “[individual words and phrases, while important, should be read in the context of the entire legislative scheme.” Mich Props, LLC v Meridian Twp, 491 Mich 518, 528; 817 NW2d 548 (2012) (emphasis added, citations omitted). Accordingly, while the majority is apparently compelled by a dictionary to look outside the no-fault act, I am compelled by the canons of statutory interpretation to conclude that Priesman wisely recognized that MCL 500.3113(a) must be considered within the full context of the no-fault act and that Priesman, therefore, correctly concluded that the Legislature’s intent to provide broad accessibility to benefits informed the proper interpretation of MCL 500.3113(a). Priesman, 441 Mich at 64-66.[4]
*543 The majority ignores the legislative intent to provide broad accessibility to benefits by conflating the concept of providing PIP benefits to a person who made a poor decision with that of endorsing that person’s conduct. See ante at 533 n 89 (implying that Priesman condones or encourages a person’s decision to joyride). Priesman no more condoned or encouraged this conduct than the no-fault act condones or encourages any other irresponsible conduct that results in an automobile accident. Nevertheless, a person who causes an accident by texting, fiddling with the radio, or simply daydreaming while driving is generally entitled to PIP benefits. Accordingly, if the majority truly believes that Priesman would “serve to entice” joyriders, ante at 533 n 89, the majority must also believe that the no-fault act entices other types of irresponsible conduct that is likely to cause automobile accidents. Moreover, I seriously doubt that the average would-be joyrider pauses to consider the availability of PIP coverage when deciding to go for a spin in another person’s car.
The majority also relies heavily on the Court of Appeals’ opinions in Butterworth, 225 Mich App 244, and Mester v State Farm Mut Ins Co, 235 Mich App 84; 596 NW2d 205 (1999), to support its mischaracterization and dismissal of Priesman’s analysis. Although those opinions reached the right result under Priesman’ s analysis, they also improperly interpreted Priesman. Specifically, Butterworth stated that MCL 500.3113(a) “does not apply to cases where the person taking the vehicle unlawfully is a family member doing so without the intent to steal but, instead, doing so for joyriding purposes.” Butterworth, 225 Mich App at 249 *544 (emphasis added). Similarly, Mester stated that “the justices of the Supreme Court who recognized a joyriding exception in the Priesman case did so not because joyriding does not involve an unlawful taking, but only because of special considerations attendant to the joyriding use of a family vehicle by a family member.” Mester, 235 Mich App at 88 (emphasis added). Indeed, nowhere in the Priesman plurality opinion did Justice LEVIN use the phrase “family joyriding exception,” and Butterworth coined the phrase “ ‘family member’ joyriding exception” by citing Justice GRIFFIN’s Priesman dissent rather than Justice Levin’s lead opinion. Butterworth, 225 Mich App at 248.
These statements in Butterworth and Mester are erroneous because Priesman accurately interpreted the phrase “taken unlawfully” as including only car thieves. Accordingly, Butterworth and Mester incorrectly concluded that Priesman “exempts” a person who “takes the vehicle unlawfully.” Instead, Priesman held that a vehicle that was driven without express permission does not meet the definition of one that was “taken unlawfully” under MCL 500.3113(a). Moreover, the majority in Butterworth rejected Judge HOEKSTRA’s concurring opinion, in which he argued that a person’s familial relationship to the owner of a car is irrelevant when applying Priesman. Judge HOEKSTRA concluded that nothing in Priesman supported the Butterworth majority’s conclusion; rather, Judge HOEKSTRA determined that Priesman stood for the proposition that “the legislators intended to except from [PIP] benefits only persons injured while driving a car they intended to steal____” Butterworth, 225 Mich App at 253 (HOEKSTRA, J., concurring).
Judge HOEKSTRA was correct in his interpretation of Priesman’s holding. Specifically, Priesman expressly *545 stated that “[t]he legislative purpose . . . was thus to except from no-fault coverage thieves while driving stolen vehicles . . . Priesman, 441 Mich at 67 (emphasis added). Accordingly, Judge HOEKSTRA accurately concluded that Priesman’s discussion of the family relationship at issue in that case “was merely part of the factual basis of the case and did not establish a limiting parameter for interpreting the Court’s remaining discussion.” Butterworth, 225 Mich App at 253 (HOEKSTRA, J., concurring). Thus, I would reject Butterworth and Mester to the extent that those opinions are inconsistent with the proper interpretation of Priesman. Additionally, I would clarify this area of law by eliminating the misleading label “family joyriding exception.” There is no “exception”; rather, Priesman simply applied the rules of statutory interpretation to give meaning to the phrase “taken unlawfully” as it is used in MCL 500.3113(a).
Finally, although the principles of stare decisis do not apply to Priesman because it is a plurality opinion, it should not go unnoticed that the Court of Appeals adopted Priesman’s holding and those Court of Appeals opinions have been binding law for the last 15 years.[5] Accordingly, as applied by the Court of Appeals, the rule has created an expectation that, at a minimum, a family member who drives a family vehicle without express permission would be covered for PIP benefits. Furthermore, insureds have paid their insurance premiums for the last 15 years with this expectation.[6] The majority *546 may not agree with Priesman; however, Priesman is nevertheless a reasonable interpretation of the statutory language, and the Court of Appeals caselaw adopting and applying the rule is binding law. MCR 7.215(J)(1). Accordingly, insurers and insureds alike have rightfully conformed their conduct in reliance on Priesman’s progeny. Thus, I believe that although Priesman and its progeny are not entitled to stare decisis consideration, the reliance interests related to this area of the law are significant, worthy of some consideration, and strongly counsel against departing from the existing state of the law.[7]
Accordingly, I see no reason to reject Priesman. I would instead affirm the judgment of the Court of Appeals in Progressive and uphold Priesman’s interpre *547 tation of MCL 500.3113(a). Additionally, I agree with Justice HATHAWAY’S conclusion that the Court of Appeals in Spectrum Health did not clearly err by holding that Craig Smith, Jr., did not unlawfully take the vehicle. Thus, I would also affirm the judgment of the Court of Appeals in Spectrum Health.
Marilyn Kelly, concurred with Cavanagh, J.
Hathaway, J., concurred with Cavanagh, J., with respect to Progressive only.

 MCR 7.215(J)(1) states, in relevant part:

 In citing these cases, I do not argue that Priesman’s consideration of the UMVARA is identical to this Court’s consideration of the UMVARA in MacDonald, Thornton, or any other case for that matter. Rather, I merely note that, contrary to the majority’s apparent belief that model acts are not worthy of any consideration regardless of the role that the model act may have played in the legislative process, this Court has previously concluded that, under certain circumstances, model acts are a valid tool in determining the Legislature’s intent. I believe that Priesman aptly explained why it was proper to use the UMVARA as a tool to interpret MCL 500.3113(a).

 In support of this conclusion, Priesman cited Keeton & Widiss’s treatise on insurance law, which explained that
“ [exclusions from PIP coverage apply to the owner of a vehicle who does not purchase the mandatory coverage and who is injured in his own vehicle; a person injured in an automobile that he has stolen; and a non-resident who does not have coverage that has been certified by his insurer.” [Priesman, 441 Mich at 68 n 15, citing Keeton & Widiss, Insurance Law, § 410, p 422.]

 Although the majority is correct that taking a car with the intent to steal is a violation of the Penal Code, the majority unsuccessfully attempts a leap in logic to conclude that the phrase “taken unlawfully” must refer to the Penal Code. In my view, Priesman persuasively explains that when the phrase “taken unlawfully” in MCL 500.3113(a) is considered in the context of the entire no-fault act as the rules of statutory interpretation require, the Legislature did not intend the broad meaning *543 that the majority imparts on the phrase “taken unlawfully.” Accordingly, the majority is obviously mistaken in concluding that I “tacitly admit[]” that the phrase “taken unlawfully” in MCL 500.3113(a) “can only refer to the Michigan Penal Code.” Ante at 517 n 22.

 It is also noteworthy that the Legislature has not chosen to modify MCL 500.3113(a) in response to Priesman and its progeny. If the majority is correct that Priesman was a grossly inaccurate interpretation of the Legislature’s intent that has caused untold harm, it would seem that the Legislature would have acted to vindicate its true intent.

 It is important to note that although Ryan DeYoung was an excluded driver under the policy at issue in Progressive, that exclusion only applied *546 to tort coverage. Pursuant to the language in the policy itself, Ryan was not excluded from recovering PIP benefits. Thus, despite the majority’s attempt to inject this issue in support of its holding, the Court of Appeals correctly concluded that the excluded-driver provision is irrelevant. Only the caselaw interpreting the meaning of “taken unlawfully” in MCL 500.3113(a) governs whether Ryan is entitled to PIP benefits, which, under Priesman’s progeny, the Court of Appeals in Progressive correctly concluded that he is.

 The correction of the Court of Appeals’ misinterpretation oí Priesman that I propose would not have the same negative effect that the majority opinion will have on the reliance interests at issue because insureds would not be denied coverage that was previously provided. Stated differently, despite their erroneous interpretation of Priesman, the previous Court of Appeals opinions nevertheless reached the right result.
Furthermore, the majority misinterprets my discussion of the reliance interests related to Priesman and its progeny to the extent that the majority reads my analysis to argue that the majority decision in this case should have prospective effect only. Rather, I discuss the reliance interests at issue to further explain why I disagree with the majority’s decision to discard 15 years of binding caselaw. Specifically, not only do I believe that Priesman is a proper interpretation of the statute, but because insureds and insurers have relied on that interpretation and conformed their conduct accordingly, I believe any disturbance of those reliance interests is unwarranted.