*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OMAR AKEEM AMOS,

        Plaintiff-Appellee,

and

MICHIGAN HEAD & SPINE INSTITUTE, P.C., and
ASCENSION ST. JOHN HOSPITAL,

        Intervening Plaintiffs-Appellees,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant-Appellant,

and

FARMERS INSURANCE EXCHANGE and USAA
CASUALTY INSURANCE COMPANY,

        Defendants.

UNPUBLISHED
July 13, 2023

No. 360091
Wayne Circuit Court
LC No. 20-012063-NF

OMAR AKEEM AMOS,

        Plaintiff-Appellee,

and

MICHIGAN HEAD & SPINE INSTITUTE, P.C.,
and ASCENSION ST. JOHN HOSPITAL,

        Intervening Plaintiffs-Appellees,

-1-

v

No. 360098
Wayne Circuit Court
LC No. 20-012063-NF

PROGRESSIVE MARATHON INSURANCE
COMPANY and FARMERS INSURANCE
EXCHANGE,

Defendants,

and

USAA CASUALTY INSURANCE COMPANY,

Defendant-Appellant.

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

In these consolidated interlocutory appeals, in Docket No. 360091, defendant Progressive Marathon Insurance Company appeals by leave granted the trial court's order denying its motion for summary disposition. In Docket No. 360098, USAA Casualty Insurance Company also appeals by leave granted and challenges the order denying Progressive's motion for summary disposition, which USAA had adopted. We affirm.

I. BACKGROUND

On the evening of May 24, 2020, plaintiff Omar Amos took a bus to the home of his mother, Venus Amos, in Detroit. Venus was asleep when Omar arrived. Venus owned two vehicles, a 2011 Dodge Ram, insured by Progressive, and a Ford Edge, insured by USAA. Venus had left the keys to the Dodge Ram sitting out that evening. Omar testified that after entering Venus's house he saw the keys to the Dodge Ram and took them. It is undisputed that Venus did not give Omar express permission to drive her vehicle that night. Omar was driving the pickup truck on 8 Mile Road in Warren when he lost control and crashed into a light pole and a building. Omar was taken to Ascension St. John Hospital, which is an intervening plaintiff in this case. Venus woke up at approximately 9:00 a.m. the morning after the accident, and she discovered the truck was not parked in the driveway where she had left it and her keys were gone. Shortly after, Omar called Venus from the hospital and told her about the accident and that he was about to have surgery. Physicians employed by intervening plaintiff Michigan Head & Spine Institute (MHSI) performed spinal surgery on Omar's neck and upper back.

Venus filed a police report in which she reported the truck as stolen. She testified that she did so only because Progressive agents told her to, and she either withdrew her complaint with the Detroit Police Department or declined to press criminal charges against Omar. Progressive initially treated Venus's claim as a theft claim, but changed the type of claim to a collision after Venus informed Progressive she would not seek charges against Omar.

Omar sought personal protection insurance (PIP) benefits from Progressive, and Progressive denied the claim. Omar brought suit against Progressive, and the operative complaint also names USAA and Farmers Insurance Exchange[1] as defendants. MHSI also filed a complaint against Progressive, USAA, and Farmers, alleging that they were liable to reimburse MHSI for the services it provided to Omar arising from the accident.

Progressive moved for summary disposition under MCR 2.116(C)(10) (no question of material fact), arguing that Omar was ineligible for benefits under the no-fault act pursuant to MCL 500.3113(a) because Omar had unlawfully taken Venus's vehicle the night of the accident by taking it without Venus's permission. Progressive also argued that Omar unlawfully took Venus's vehicle by illegally driving it while unlicensed, in violation of MCL 257.301(1), and in violation of Michigan's operating under the influence statute, MCL 257.625. USAA also moved for summary disposition of Omar and MHSI's claims, adopting Progressive's arguments.[2] Omar and MHSI argued in response that MCL 500.3113(a) did not bar their claims because Omar had previously driven Venus's truck and she had never denied him permission to do so.

After hearing oral argument, the trial court denied Progressive's and USAA's summary disposition motions on the record. The court ruled that there was a question of fact whether Omar's taking of the vehicle was unlawful for the reasons stated by Omar and MHSI. The trial court denied both Progressive and USAA's motions for reconsideration.[3]

## II. ANALYSIS

Progressive and USAA argue that the trial court erred when it denied their motions for summary disposition because there is no question of material fact that Omar unlawfully took Venus's vehicle and his claim for PIP benefits is barred by MCL 500.3113(a). We disagree.[4]

---

[1] Omar applied for PIP benefits through the Michigan Automobile Insurance Placement Facility (MAIPF), and the MAIPF assigned his claim to Farmers Insurance Exchange.

[2] Farmers filed a response to Progressive's summary disposition, which also concurred with Progressive's arguments.

[3] Following the denial of Progressive's motion for reconsideration, the trial court entered a stipulated order allowing Ascension to intervene in this case.

[4] We review de novo a trial court's decision on a motion for summary disposition. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion brought pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a claim and is properly granted when the proffered evidence fails to establish a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). A genuine issue of material fact exists when the record leaves open issues of fact over which reasonable minds may differ. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). A court "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, in a light most favorable to the party opposing the motion." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013).

MCL 500.3113(a) provides:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

> (a) The person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully. [MCL 500.3113(a).]

In *Priesman v Meridian Mut Ins Co*, 441 Mich 60; 490 NW2d 314 (1992), a plurality of the Supreme Court held that a fourteen-year-old son did not lose his statutory right to PIP benefits under MCL 500.3113(a) by taking his mother's automobile without her permission while she slept. The Court determined that the Legislature did not intend for MCL 500.3113(a) to preclude recovery of benefits in family "joyriding" situations:

> Legislators generally are also parents and sometimes grandparents. Some may have had experience with children, grandchildren, nephews, nieces, and children of friends who have used a family vehicle without permission. Some may have themselves driven a family vehicle without permission. [*Id*. at 68.]

The Court was therefore not persuaded that the "evil" with which Legislature was concerned with in enacting MCL 500.3113 was

> teenagers who "joyride" in their parents' automobiles, especially automobiles covered by no-fault insurance, [considering] that countless persons would be entitled, under the legislation they were drafting, to no-fault benefits without regard to whether they are obliged to purchase no-fault insurance or, if obliged to insure, do in fact do so. [*Id*.]

20 years later, however, in a 4-3 decision, the Supreme Court overruled *Priesman* and its progeny in *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503; 821 NW2d 117 (2012). In that case, the Court determined that the "the family-joyriding exception is not supported by the text of MCL 500.3113(a)." *Id*. at 533. The Court held "that the use of the phrase 'a person' in MCL 500.3113(a) clearly and plainly includes a family member who has taken a vehicle unlawfully, thereby precluding that person from receiving PIP benefits." *Id*. at 509. The Court also held "that any person who takes a vehicle contrary to a provision of the Michigan Penal Code—including MCL 750.413 and MCL 750.414, informally known as the 'joyriding' statutes—has taken the vehicle unlawfully for purposes of MCL 500.3113(a)." *Id*. Michigan's joyriding statutes, MCL 750.413 and MCL 750.414, both deem it unlawful to take a motor vehicle without authority. *Id*. at 518. "Because a taking does not have to be larcenous to qualify as unlawful, the phrase 'taken unlawfully' in MCL 500.3113(a) applies to anyone who takes a vehicle without the authority of the owner, regardless of whether that person intended to steal it." *Id*.

*Spectrum Health* involved consolidated cases. In *Spectrum Health*, a son was expressly forbidden by his father from driving the father's vehicle. The father allowed the son's girlfriend to drive the vehicle but also instructed her that the son was not allowed to drive the vehicle.

-4-

Nonetheless, the girlfriend gave the son the car keys and he later crashed the vehicle into a tree. *Id*. at 512. In the other case, *Progressive Marathon Ins Co v DeYoung*, a wife had expressly prohibited her husband from driving vehicles owned by the wife given the husband's multiple drunk-driving convictions. Despite these "standing instructions," the husband used the vehicle while intoxicated and crashed the vehicle. *Id*. at 513. Applying its holdings in that case, the *Spectrum Health* Court held that both claimants were barred by MCL 500.3113(a) from recovering PIP benefits because they had been expressly prohibited from driving the respective vehicle. See *id*. at 524-525, 537-538.

Relying on *Spectrum Health*, Progressive and USAA argue that Omar unlawfully took Venus's vehicle contrary to MCL 750.413 and MCL 750.414.[5] There is no dispute in this case that Omar was willingly using the vehicle. The question is whether did so unlawfully, i.e., without authority, and whether he knew or should or have known that it was unlawful.

Omar argues that this case is materially distinguishable from the other family joyriding cases because, unlike the two claimants in *Spectrum Health* for instance, he was not expressly prohibited from using the vehicle. The insurers argue that this is irrelevant because Omar had not obtained express permission from his mother to use the vehicle on the night in question. However, no Michigan court has held that a family vehicle is necessarily taken without authority if a family member uses the vehicle without obtaining express permission. Even though the "family joyriding exception" has been overruled, it remains true that the permissibility of one family member borrowing a vehicle from another is based on the nuances of the particular familial relationship and those relationships, while not dispositive, are highly relevant to the question of implied authority and the driver's understanding . It is not for courts to declare that families may not allow use of a vehicle through implied permission based on the circumstances. The statute's language does not require that a family member obtain express permission each and every time before using another family member's vehicle. Moreover, it is not enough that a family member may have known that they did not have permission. The Legislature could have stated that the driver merely needed to know that he was taking the vehicle "without permission." Instead, it required knowledge that the act was "unlawful." MCL 500.3113(a). It is clear that if an unrelated person takes someone else's vehicle without permission they would know that doing so is unlawful. And the same is true when a person uses a rental vehicle that they have not rented and as to which the rental company has not granted express permission. However, it is not always true in the case of a family member who could reasonably conclude that using a family member's car without explicit permission would be acceptable to the owner. Accordingly, when there has not been an express prohibition by the vehicle's owner, whether there was "authority" to use the vehicle will necessarily turn on the circumstances of each case and generally require a factual determination.

---

[5] In relevant part, MCL 750.413 provides that "[a]ny person who shall, wilfully and without authority, take possession of and drive or take away . . . any motor vehicle, belonging to another, shall be guilty of a felony . . . ." MCL 750.414 similarly provides, in relevant part, that "[a]ny person who takes or uses without authority any motor vehicle without intent to steal the same . . . is guilty of a misdemeanor . . . ."

In this case, Omar testified that he had used his mother's vehicle multiple times and that on each occasion he had asked for permission before doing so. Omar believed that he did need Venus's permission to use the vehicle, but there was never a time when he asked for permission and she denied the request. Further, the record is unclear whether Venus ever expressed any policy regarding the vehicle to Omar, and MCL 500.3113(a) "examines the legality of a taking from the *driver*'s perspective[.]" *Spectrum Health*, 492 Mich at 522. From Omar's perspective, his mother had granted him permission to use the vehicle every time he had asked to do so. When he arrived at his mother's home on May 24, 2020, she was sleeping and therefore he could not ask for her permission without waking her. In that sense, this case presents the question whether Omar should have awoken his sleeping mother to ask for permission to use the vehicle, or whether considering the circumstances and his history with the vehicle, he reasonably believed that he had implied permission to do so. Resolution of familial situations such as this is plainly a matter best left to a jury.

Progressive and USAA argue that a driver may not assume they had permission to use a vehicle under the "should have known" standard as articulated in *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1; 972 NW2d 860 (2021). In that case, the plaintiff was injured while driving his wife's rental car and sought PIP benefits from the defendant. *Id*. at 4-5. Because the plaintiff was an unlicensed driver, he was expressly forbidden by the rental car agreement from driving the car. *Id*. Thus, the plaintiff was expressly unauthorized to drive the car by the vehicle's owner, i.e., the rental car company, but he did not have actual knowledge that he lacked authority. *Id*. This Court concluded that,

> [u]nder the "should have known" standard, plaintiff was obligated to determine the scope of the authorization that the owner, Meade Lexus, had set under the rental agreement for a nonparty such as himself to take and drive the car. Stated another way, plaintiff knew that his wife, who was the party to the contractual agreement with Meade Lexus, was not the owner of the car and that any authority to use the car could only be based on the terms set by the owner. Thus, before simply driving off, plaintiff was obligated to learn the terms of the rental agreement; he "should have known" the terms because a person may not simply take what he knows to be another's property without taking any steps to determine if the owner authorized the taking. The mere assumption or supposition that it must be permissible to take a third party's property, *without more*, does not satisfy the "should have known" standard of MCL 500.3113(a). [*Id*. at 26 (emphasis added).]

*Ahmed* is materially distinguishable on the ground that there was a legally binding document that, in effect, expressly prohibited the plaintiff from operating the vehicle. As discussed, Omar was not expressly prohibited from driving his mother vehicle's and there was certainly no document he could consult to determine whether she would deny permission on any particular occasion. And his mother was the owner of the vehicle, not a "third party" like the renter in *Ahmed*. Further, Omar's use of the vehicle was based on more than a "mere assumption." *Id*. That decision was informed by his history with the vehicle, including that he each time he had asked to use the vehicle his mother said yes. Progressive and USAA's attempt to import isolated statements from *Ahmed*—decided in the context of rental car agreements—and import them to the present case is unpersuasive. Indeed, the insurers' reliance on *Ahmed* in this manner is simply a different way of arguing that a plaintiff must obtain express permission each time they use a family

member's vehicle. For the reasons discussed, this position is untenable and it ignores the reality that families often do not articulate hard-and-fast rules that must be followed in all circumstances.

We acknowledge that there are some inconsistencies in Omar and Venus's testimony and that the record allows for reasonable inferences that can be drawn against them. However, at this stage we must view the evidence in a light most favorable to Omar as the nonmoving party. Doing so, we conclude that reasonable minds could differ whether the vehicle was taken unlawfully and whether Omar knew or should have known that the taking was unlawful.

Progressive and USAA alternatively argue that Omar unlawfully took Venus's vehicle by driving while unlicensed in violation of MCL 257.301(1), and in violation of Michigan's operating under the influence statute, MCL 257.625.[6] However, this Court's decision in *Monaco v Home-Owners Ins Co*, 317 Mich App 738; 896 NW2d 32 (2016), makes clear that MCL 500.3113(a) only prohibits PIP benefits on the basis of an unlawful *taking* of a vehicle and not when one unlawfully *operates* the vehicle of another.

*Monaco* involved a situation where the injured claimant, who was 15 years old, had a permit to drive that would only authorize her to drive if accompanied. She instead drove a family vehicle unaccompanied and was injured. *Id*. at 741-742. Her mother initially testified that the claimant took the car without permission, but then changed her testimony and stated that she had given her daughter permission to take the car. *Id*. at 743. The insurer argued that MCL 500.3113(a) barred recovery of PIP benefits because it was unlawful for the mother the give the daughter permission to drive under the Michigan Vehicle Code (MVC), MCL 257.1 *et seq*. *Id*. at 749. This Court disagreed, observing that

> [t]he distinction between unlawfully taking a motor vehicle and unlawfully using a vehicle was recognized in *Rambin v Allstate Ins Co*, 495 Mich 316, 331; 852 NW2d 34 (2014), wherein the Supreme Court stated that "the unlawful use of a vehicle . . . is not relevant under the unlawful taking language in MCL 500.3113." And this Court has observed that, with respect to the language in MCL 500.3113(a), "[c]learly, the terms 'take' and 'use' are not interchangeable or even synonymous; obtaining possession of an object is very different from employing that object or putting it into service." *Amerisure Ins Co v Plumb*, 282 Mich App 417, 428; 766 NW2d 878 (2009), abrogated in part on other grounds by Rambin, 495 Mich. at 323-324 n 7. [*Monaco*, 317 Mich App at 749.]

Accordingly, this Court held that although it was undisputed that the daughter's use of the vehicle violated the MVC, those violations had no bearing on the daughter's authority to take the vehicle and therefore did not implicate MCL 500.3113(a). *Id*. at 749-750.

Applying *Monaco* to the instant case, that Omar had a suspended license and was intoxicated is not relevant to whether the *taking* of the vehicle was unlawful. While Omar's *use* of the vehicle may have been unlawful, that is distinct from an unlawful taking. Accordingly, Progressive and USAA's argument that Omar's violations of the MVC render the taking of the

---

[6] Omar's blood alcohol level when taken at the hospital was above the legal limit.

vehicle per se unlawful is without merit. We acknowledge that the *Ahmed* Court expressed disagreement with *Monaco* and contemplated the need for a conflict panel regarding that decision. See *Ahmed*, 337 Mich App at 19 n 8. However, we do not share those concerns. In *Spectrum Health*, the Supreme Court stated that "the term 'unlawful' can only refer to the Michigan Penal Code[.]" *Spectrum Health*, 492 Mich at 517 n 22. The Supreme Court further explained that a vehicle is taken unlawfully "if it is taken without the authority of its owner." *Id*. at 518 n 25. Accordingly, this Court's holding in *Monaco* that the unlawful use or operation of a vehicle under the MVC has no bearing on the phrase "taken unlawfully" as used in MCL 500.3113(a) appears to be a straightforward application of the Supreme Court's statements in *Spectrum*.[7]

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro

---

[7] Although *Monaco*, 317 Mich App 738, was decided under the previous version of MCL 500.3113(a), the current statute does not lend itself to the *Ahmed* Court's interpretation that driving the vehicle of another in contravention of the MVC constitutes an unlawful taking. There is nothing from the text of 2014 PA 489 to indicate that the Legislature intended to expand the definition of "taken unlawfully" to include using the vehicle of another in violation of the MVC.